## LITTLE ROCK AND FORT SMITH RAILROAD COMPANY VS. DUFFEY.

1.  MASTER AND SERVANT:   *Master's liability for injury to.*
    When one enters into the employ of another, he assumes and is presumed to have contracted with reference to all the risks and hazards ordinarily incident to the employment; and the master is not liable to him for injuries resulting from an accident which he might not, by ordinary care and diligence, have prevented. The same rule applies, also, to perils and risks not incident to the service, of which the servant has notice, unless he has been induced to accept the service by the promise of the master to remove the cause, and he has failed to do so.

2.  SAME: *Injury from negligence of fellow-servant.*
    The master is not liable for an injury to his servant, caused by the negligence of a fellow-servant engaged in the same business, if there be no negligence in the appointment of the latter, or in his retention after notice of his incompetency.

3.  SAME: *Negligence.*
    The question of negligence is a mixed one of law and fact, in the determination of which is to be considered whether an act has been done or omitted, and, also, whether the doing or omission of it was a breach of legal duty.

4.  SAME: *Master's liability as to tools furnished.*
    There is no implied warranty on the part of a master that the tools furnished his servant are sound and fit for the purposes intended. He is only bound to use proper care in providing them.

Little Rock and Fort Smith Railroad Company vs. Duffey.

5. SAME: *Injury from use of defective tool.*
   That a master might have known by the use of ordinary care and
   diligence, that a tool furnished his servant for use was defective, is not
   sufficient to make him liable for the injury resulting from its use, irre-
   spective of any probability of harm or danger in using it.

APPEAL from *Faulkner* Circuit Court.
Hon. J. W. MARTIN, Circuit Judge.
*Clark & Williams*, for appellant.
*S. A. Cockrill*, for appellee.

HARRISON, J. This was an action by the appellee, against
the appellant, to recover damages for an injury received
by the former while in the latter's employ. The com-
plaint alleged that the plaintiff, while in the defendant's
employ, and working on its track, had, through the de-
fendant's negligence, an eye put out by the breaking of a
defective and unsafe spike-maul, which was at the time
known to the defendant to be defective and unsafe.

The defendant denied the alleged negligence, or that the
maul was defective or unsafe, or if it was, that it had any
knowledge of the fact, and averred that the accident hap-
pened by the plaintiff's and his fellow servants' improper
and negligent use of the maul, the condition of which, if
defective and unsafe, was at the time known to him.

The plaintiff, for himself, testified that he was, when the
accident happened, in the employ of the defendant and
working with other hands, under the direction of Mr. Dar-
rou, the foreman or section-boss, on its track, raising ties
and taking out old and putting in new ones: That while
so engaged, a spike, in being driven, bent in under the
rail, when, to force it out, one of the spikers put the small
end of his spike-maul between the spike and the rail, upon

the face of which another struck with his maul, and, while so striking, a small piece of steel flew off and struck him, the witness and plaintiff, in the eye, and which entered the ball and put out and destroyed the eye. He was, when struck by the piece of steel, holding up the tie with a claw-bar, outside of the track, using a block of wood as a fulcrum, and sitting on the end of the claw-bar, outside of the track. He supposed, when hurt, that it was by a piece of the spike, and did not know, until the next day, that it was by a piece of steel from the face of the maul. Upon examining the maul (which of the two does not appear), he found the face of it rounded and badly battered, and the rim of the face shivered, and two or three pieces out of it. He believed that the accident was caused by the striking of the faces of the mauls together in the attempt to force the spike out from under the rail, and that it would not have happened if the rim had not been shivered. He had not, himself, used the maul, and had not before noticed its condition, except that it had a split handle. It appertained to his part of the work to draw crooked spikes, when so directed; but the foreman, who was standing about twenty feet behind him, looking on, and had plenty of time after the commencement of the striking and before the accident, to have stepped to the strikers, gave no such directions. Darrou, the foreman, hired and discharged hands, and it was his duty to give direction to those under him. He had never ordered the men not to strike the faces of the mauls together. He had worked on railroads twelve or fourteen years, and was three years of the time a foreman, and he could then get employment as a foreman but for the loss of his eye. He was receiving, when hurt, he said, $1.10 a day. He further testified as to the expenses

attending his cure, which part of his testimony need not be stated.

Thomas Conley, a witness also for the plaintiff, testified that he was, when the plaintiff was hurt, working on the track tamping, about fifty yards from him, and after the accident he was sent by Darrou to take his place. He saw the maul about three days after the accident. It had a shivered handle, wound with wire, and the face of it was worn round and its edge battered, and pieces of steel broken off. He had, he said, been a laborer on railroads for about sixteen years, working principally on grading. Tools are furnished the hands by the foreman, whose duty it is to have the damaged ones repaired, or to get new ones in their place. It was the business of the foreman to know the condition of the maul. It was still in use when he left the road at the end of the month.

And Charles Watson, another witness for the plaintiff, testified that he was a common laborer, and he had been working on the road under Darrou about two weeks when the accident occurred, and he heard of it about a week after. He saw a maul, with a split handle, wound with wire, the face of which was globular and likely to throw a spike out, and was flindered around the edges. He had had some experience in spiking. Such a maul was more likely to splinter off than one with a smooth face. It was Darrou's duty to see to the tools of the trackmen. The maul was used after the accident, and as long as he remained on the road.

D. W. Darrou testified for the defendant, that he was section-boss, or foreman, in charge of the hands with whom the plaintiff was working when the accident occurred, and had six men, three of whom were tamping. He was about ninety feet from the plaintiff, and did not see the men. He

heard an exclamation by the plaintiff, and when he saw that he had left his place, he sent a man to take it, and went to where he was, and after seeing him, sent for a physician. The physician saying a piece of steel had entered the eye, he examined the maul, and discovered that a small piece of steel, so small as hardly to be perceived, had chipped off of it. He had been careful in the selection, and looking after the tools, and they were as good as are usually used, and as could be bought in the market. He saw them every day, and he had often examined the mauls, and knew of no real defect in any of them. His attention had once been called to the handle of a maul that had split, and he had it fixed by mending it with wire, and it was then as good as ever. He then noticed that the face of the maul was chipped a little, but the use of the maul was not materially impaired by it, and such chipping, in his opinion, did not render a maul dangerous. He had seen mauls used as those were when the accident happened, occasionally for fifteen or twenty years, and had never heard of such an accident before. The face of the maul is of tempered steel, and will become abraded by use, and if struck on surfaces of equal hardness, will splinter or chip, and is liable to do so, also, from driving the spikes, but no more liable in either case after it has been some time in use than when new. The chipping is vertical, leaving the face not so large, but as smooth as ever. If one of these corners were struck upon a maul or spike, it would be more likely to splinter than if two faces were struck together. A spike in driving sometimes bends under the rail, when, to prize it out, the men will sometimes put the small end of a maul between the rail and it, and drive the maul with another maul, striking the two faces together. He had often ordered them to draw the spike, which it was the nipper's place to do. The plain-

tiff was nipper when the accident occurred. He considered a maul good as long as it answered its purpose and drove a spike straight. He had, when necessary, made requisition for tools, and they were always furnished. The wages of a foreman, he said, was $50 a month.

And Thomas Hurley, another witness for the defendant, testified that he had been four or five years roadmaster on the defendant's road, and that the tools furnished the hands were generally as good as he had ever seen on any road. That whenever a foreman asked for tools they were furnished, and when needing repair he sent them to the shop, and when sent out from it they were in good order.

The court gave the jury four instructions for the plaintiff, each of which was objected to by the defendant, and eleven were asked by the defendant, all of which, except the tenth, were refused.

Those given for the plaintiff were as follows:

1. The jury are instructed that it was the duty of the defendant railroad to use all reasonable precautions for the safety of the men working for them, by giving them suitable materials and tools to work with, and by keeping them in a condition not to endanger their safety beyond what was ordinarily incident to the use of such tools when in proper repair.

2. The jury are instructed that if they find that the plaintiff was injured by reason of a defective or insecure spike-maul, used at the time of the injury by an employee of the defendant railroad company in discharge of his duty, while he, the plaintiff, was in discharge of *his* duty, and that the defendant railroad company, through its agents, knew that said maul was defective, or insecure, or might have known it by the use of ordinary care or diligence, they must find for plaintiff, unless they also find that plain-

tiff was also in fault at the time of the accident, and by reason of his fault contributed to the injury; or that he knew the maul was defective; or ought, by ordinary care, to have known it; and that the defects were of such a nature as would induce him reasonably to foresee what might endanger his safety.

3. The jury are instructed that if they find for plaintiff, they can take into consideration in estimating the damages to be awarded him, the amount expended in effecting a cure of the injury received by the defendant's negligence; the value of the time lost by plaintiff; a reasonable amount for his physical pain and suffering; and also further damages to be estimated by the difference between the amount he could have earned before the injury, and the amount he can earn in his maimed condition.

4. The jury are instructed that if they find the duties of Darrou were to provide tools for the men under him, and to see that they were kept in repair, and that he had control over the men under him, with power to discharge them and employ others, he was a manager of defendant, and notice of defects in the tools to him was notice to the company.

Those requested by the defendant were as follows:

1. The defendant moves the court to instruct the jury that the burden of proving every material fact in the case devolves on the plaintiff, and he must prove, to the satisfaction of the jury, before he can recover: That defendant negligently furnished defective tools to work with, or required him to work with fellow-servants who were furnished with defective tools, whereby plaintiff was injured, and that these defects and risks were at the time known to defendant, or by the use of ordinary care could have been known, and were unknown to the plain-

Little Rock and Fort Smith Railroad Company vs. Duffey.

tiff at the time of and before the injury, and the plaintiff has failed to prove these material facts, and is not entitled to recover; they are, therefore, instructed to find for the defendant for want of testimony on the part of plaintiff.

2.  If the jury believe the plaintiff acted negligently in the use of the tools he had, he can not recover, for he who sues for damages on account of negligence, must himself be without fault, and must not himself contribute to the injury caused in part by defendant's negligence.

3. ` If the jury believe from the evidence that the plaintiff was injured by the misconduct or negligence of a fellow-servant of plaintiff while they were engaged in a common employment of defendant, plaintiff can not recover in this action.

4.  The defendant is not responsible for injury received by plaintiff while in its employ by any negligence of a fellow-servant, unless such fellow-servant was known to defendant to be negligent and untrustworthy, and in plaintiff's ignorance of this characteristic, he was compelled to work with him.

5.  If the plaintiff was injured by defects in tools or machinery, which defects were known to plaintiff before he was injured, plaintiff can not recover.

6.  If the jury believe from the evidence, that defendant, the railroad company, furnished defective tools, yet if they believe plaintiff worked with them after notice of danger to which he was exposed, continued in the employment and was thereby injured, in such case the law considers the plaintiff as having contributed to his own injury, that the plaintiff was as much bound to take care of himself as the defendant was to take care of him, and if plaintiff possessed the knowledge of the matter of the defect in tools, he was bound to refuse to use them, or refuse

the employment, and if he failed to do so he assumed the risks incident to the use of such tools, and can not recover for injuries resulting therefrom.

7.  When a person enters into the employment of another, he assumes all the risks incident to the business. He is presumed to have contracted with reference to all the hazards and risks ordinarily incident to the employment, and he can not recover for injuries resulting to him therefrom; and if the jury believe that the defendant has used ordinary care and diligence in selecting the implements and machinery, and fellow-servants, with which plaintiff was to work in his employment, and had no knowledge of any defect in them, or reason to believe there was any defect which was calculated to inflict the injury, plaintiff can not recover for any injury resulting to him in the use of defective tools, if he had knowledge of such defect, and with such knowledge continued their use.

8.  If the jury believe from the evidence that defendant furnished the tools to work with to plaintiff, and had no means of knowing of any latent or hidden defect in them, and there was no defects in them that was not as open to the inspection of plaintiff as defendant, plaintiff can not recover for any injury resulting from the use of such defective tools caused by such defect.

9.  If any defect in the tools existed which plaintiff knew before the injury, he can not recover for any injury caused by such defect.

10. If the jury believe from the evidence that the injury complained of was the result of an accident, which could not have been foreseen and prevented by the exercise of ordinary care and diligence on the part of defendant, they must find for the defendant.

11. If the jury believe from the evidence that the injury

complained of was proximately caused by the manner in which the tools were being used by fellow-servants of plaintiff at the 'time of the injury, then they should find for the defendant whether they believe the tools were defective or not.

The court, on its own motion, against the objection of the defendant, gave also the following charge:

"There are several propositions of law arising in this case upon the view presented by the defense, to which the court calls your attention: First, as to the liability of the defendant road for an injury resulting from the misconduct of a fellow-servant. The road would not be responsible for an injury arising from the negligence of a fellow servant while they were engaged in a common employment of defendant, unless you should find that the proximate cause of the injury was a defective implement furnished by defendant to such fellow-servant. An employee assumes the ordinary risks of negligence on the part of his fellow-servants, but this could not be said to include the risks incident to their negligence while using defective tools furnished by the master. Upon the view presented by the counsel for defendant that the company are not responsible, even though there was negligence in supplying tools, if the plaintiff, knowing such defect, continued in the employment, the court instructs you that if you believe that the defendant railroad company furnished defective tools, yet if you believe the plaintiff continued in its service after notice of such defect and the danger to which he was thereby exposed, and was thereby injured, in such case the law considers the plaintiff as having contributed to his own injury; that the plaintiff was bound to exercise ordinary care and prudence under all the circumstances of his position to protect himself from injury, and if the plaintiff

possessed the knowledge of the matters of defect in the tools, and the danger arising therefrom, he was bound to refuse to use them or quit the employment, and if, with such knowledge, he continued in it, he assumed the risk incident to the use of the tools, and can not recover for an injury that resulted therefrom.

"When the servant is injured by defective machinery, of the defect in which he has knowledge, he is treated as waiving all risks incident to such defect, but the fact that he might have known of the defect, or had the means or opportunity of knowing of it, will not preclude him from a recovery; unless he in fact did know of it, or in the exercise of ordinary care ought to have known of it, he can recover.

"He is not bound to examine the machinery to find defects. He has the right to presume that it is suitable, unless the defects are palpable, and open to ready observation. He is only bound to exercise reasonable attention, and take notice of such defects as such reasonable attention brings to his observation. The duty of the master in the first instance is to furnish safe tools and keep them in repair; but if the servant knows that the tools are defective and unsafe, he assumes all risks incident to their use in such condition if he continues to use them.

"Ordinary care is defined to be the use of such watchfulness and precautions as are fairly proportioned to the danger to be avoided, judged by the standard of common prudence and experience. Also, such care as a reasonably prudent man, under the peculiar circumstances of the case, would exercise to preserve himself from injury.

"The question of care and diligence, or negligence, is one peculiarly within the province of the jury, and it is for them to settle this in view of all the circumstances sur-

rounding each particular case; the specific degree of care that the master must exercise in each case is to be measured by the nature and character of the business, the appliances used, and the risks therefrom to those employed in and about such business."

The jury returned a verdict for plaintiff for $1,750.

The defendant filed a motion for a new trial, the grounds assigned for which were the giving of the instructions asked for the plaintiff, and the refusal to give those, except the tenth, asked by the defendant, which motion was overruled.

The doctrine is well settled that where one enters into the employ of another, he assumes, and he is presumed to have contracted with reference to, all the hazards and risks ordinarily incident to the employment, and the master is not liable to him for injuries resulting from an accident which he might not, by ordinary diligence and care, have prevented.

1. MASTER AND SERVANT: Master's liability for injury to servant.

The same rule applies also to perils and risks not incident to the service of which the servant has notice, unless he has been induced to accept the service by the promise or understanding of the master to remove the cause, and he has failed to do so.

Nor is the master liable to him for injuries produced by the negligence of a fellow-servant engaged in the same business, if there be no negligence in the appointment of the latter, or in his retention after notice of his incompetency.

2. ——: Liability for injuries by fellow-servant.

The question of negligence is a mixed one of law and fact, in the determination of which is to be considered whether an act has been done or omitted, and whether, also, the doing or omission of it was a breach of legal duty.

3. ——: Negligence

" The extent of the defendant's duty is to be determined by a consideration of his circumstances. The law imposes duties upon men according to the circumstances in which they are called to act; and though the law defines the duty, the question whether the circumstances exist which impose that duty upon a particular person, is one of fact." *Shear. & Red. on Neg.*, *11*.

WHARTON says: " As a rule, the degree of diligence required is proportioned to the duty imposed, and the degree of negligence imputed corresponds to the degree of diligence exacted, with the qualification that the utmost degree of diligence exacted is that which a good business man is, under the particular circumstances, accustomed to show." *Whar. on Neg.*, sec. *48*.

**4. ——:**
**Liability as to tools furnished to servant.** The evidence in this case conduced to prove that the accident by which the plaintiff was injured, happened in consequence of a maul furnished by the defendant, and used in and about the work the plaintiff was engaged in, having by former use become abraded and broken around the face; and it presented to the jury the question not only whether the accident was so produced, but also, if so, whether, under the circumstances, negligence could be imputed to the defendant.

It was the province of the jury to determine the weight to be given to the evidence, but the first instruction asked by the defendant denies to them that right, and, assuming its insufficiency to prove the negligence alleged, attempted to exclude it from their consideration.

The refusal of the instruction was manifestly right.

There was no implied warranty on the part of the defendant that the tools furnished should be sound and fit for the purpose intended; the law imposed only the obligation to use proper care in providing them. *Shear. & Red. on*

*Neg., 103; Wonder v. Baltimore and Ohio Railroad Company, 32 Md., 411.*

The defendant's liability, therefore, did not depend upon the fact that the maul was defective, but upon the fact that it ought not, in its condition, to have been used about the work in which the plaintiff was engaged.

As said by the court of appeals of New York, in the case of *Leonard v. Collins, 70. N. Y., 90,* "In determining the question of the master's negligence in an action by the servant for an injury alleged to have been sustained by him while in the master's employment, from the negligence of the latter, the jury are to inquire whether, under the circumstances proved, the master did anything which, in the exercise of reasonable and ordinary care and prudence, he ought not to have done, or omitted any precaution which a prudent and careful man would or ought to have taken, and as they shall find upon this question (if there was no negligence on the part of the servant), determine their verdict."

"We are not to look solely at the act or the omission, but must take in view also the circumstances. The degree of care and vigilance imposed by the circumstances is not the same in all cases—it varies according to the danger involved in the want of negligence." *Cooley on Torts, 630.*

"The law makes no unreasonable demands. It does not require from any man superhuman wisdom or foresight. Therefore no one is guilty of culpable negligence by reason of failing to take precautions which no other man would be likely to take under the same circumstances." *Shear. & Red. on Neg., 5.*

"The foreseeing of a harm as remotely and slightly probable, does not involve the imputation of such harm." *Whart. on Neg., sec. 76.*

Little Rock and Fort Smith Railroad Company vs. Duffey.

It can not reasonably be contended that a tool or implement, which has become worn and defective by use, but which still answers its purpose, should be cast aside as dangerous, unless there is some apparent cause of danger in its continued use.

"It can only be required of the master, in providing tools or implements for his servant, to use due and reasonable diligence, so as to make it reasonably probable that injury will not occur in the use of them." *Wonder v. Baltimore and Ohio Railroad Company, supra.*

5. Injury from use of defective tools.　It was an error, therefore, to instruct the jury, as was done in the plaintiff's second instruction and the charge given by the court on its own motion, irrespective of any probability of danger or harm, that if the maul was defective, and such defect might have, by the use of ordinary care and diligence, been known by the defendant, the defendant was liable to the plaintiff for the injury he received.

Counsel for appellant insist that as there was no evidence as to the age of the plaintiff, his health and physical condition, or as to his probabilities of life, the plaintiff's third instruction, by which the jury were told that they might, in the estimation of the damages, consider the difference between what he was able to earn before the injury, and that which he could earn in his maimed condition, should not have been given.

If such part of the instruction was in fact abstract, there is nothing in the case from which we might presume that the jury were misled, and the defendant prejudiced by it, but we think there was some evidence of such difference.

We can see no valid objection to that, nor any to the remaining instructions given for the plaintiff.

There was no evidence to which the second instruction

asked by the defendant was applicable. The plaintiff himself used neither of the mauls. He was working with a claw-bar, in the use of which no negligence was charged. There was no error, therefore, in refusing it.

The other instructions refused, the third and those following it, and, except as just mentioned, the charge of the court, which substantially contains, however, the instructions, appear to be in accordance with the principles we have above stated.

The judgment is reversed and the cause remanded.