CITIZENS' STREET RAILWAY V. STEEN.

| 42 | 321 |
| 62 | 169 |
| 42 | 321 |
| 72 | 578 |
| 42 | 321 |
| 78 | 561 |

1. NEGLIGENCE: *Contributory—counter negligence.*

Although one injured by a collision from a street railroad car may have been guilty of negligence, yet if the driver could, by reasonable diligence, have discovered the negligence in time to have avoided the collision by using ordinary care, and failed to do so, the company would be responsible for the injury.

2. SAME: WHAT IS: *Ordinary care, what is.*

The ordinary care required of a street railroad company to avoid a collision, is such watchfulness and precaution as are fairly proportioned to the danger to be avoided, judged by the standard of common prudence and experience; or such care as a reasonably prudent man, under the peculiar circumstances of the case, would exercise. Negligence is the failure to use such care and prudence.

3. STREET RAILROADS: *Rate of speed.*

A street railroad company may run its cars at any rate of speed convenient to it and not dangerous to passengers and the public along the track; and other parties have the right to drive along the street and cross and recross the track, using proper care and prudence to keep out of the way of the cars.

4. DAMAGES: *Compensatory—vindictive.*

The measure of damages for an injury from a collision of a street railroad car with a carriage is a fair pecuniary compensation for the injuries sustained by the occupant and his property; but if the injury be also willful, or wanton, or attended by such gross negligence as manifests a careless disregard of the consequences to the plaintiff, the jury may add such sum as they think proper under the circumstances, as vindictive or exemplary damages, or as punishment for the wrongful conduct of the driver.

APPEAL from *Pulaski* Circuit Court.

Hon. J. W. MARTIN, Circuit Judge.

*John McClure* for appellant.

*T. J. Oliphint* for appellee.

The first and second instructions for appellee are cer-

tainly law. *37 Ark., 569; Field on Dam., sec. 168; Cooley on Torts, pp. 674–5; 3 Ohio, 172; 6 Ib., 105; 8 Ib., 570.*

Appellant's instructions properly refused. The first and third are abstract, and the others do not properly declare the law applicable to this case. See authorities *supra.* The modification of number two was more favorable to appellant than appellee.

EAKIN, J. This is an action by appellee against a street railway company in Little Rock, to recover damages for an injury to her person and property, occasioned by a collision between a car of the company and a horse and buggy with which she was driving, upon a street along which the line of railway ran.

The buggy was partially upset against a sand bank, and to some extent injured; the horse was lamed, and the plaintiff herself bruised and hurt.

The jury found for the plaintiff, fixing her damages at $150. A motion for a new trial was denied, exceptions taken, and an appeal.

The material facts proven for plaintiff are as follows: She was driving down the street with her little son in the buggy. The boy stood up, cried to his mother that the street car was coming, and struck the horse with a whip to increase his speed. He repeated the blow, and the horse went still faster, but not so fast as the coming car. There was a sand pile on the street, with a narrow carriage way between it and the track. When about midway of this, where the buggy could not turn to either side, the collision occurred, with the results above mentioned. The top of the buggy was up, and she did not see the car when her son spoke. She says the car was going at an unusual rate of speed, and the driver did not stop when the accident occurred. The sand pile on the street was so placed

Citizens' Street Railway v. Steen.

that all vehicles on that side were compelled to pass between it and the railway, with only four or five feet of room. There was some proof of actual pecuniary damage to the horse and buggy, including harness, but considerably short of the verdict. She says the buggy was struck by the front part of the car very forcibly. In this she is sustained by the testimony of a spectator, who says further that the driver of the car was coming at *an extraordinary rate of speed*, and that the driver did not stop, nor attempt to stop it. He thought the brake was broken and that the car would run over the mule on the down grade. The buggy was thirty or forty feet in advance of the car when he first saw it.

For defendant, the car driver testified that plaintiff was driving on the track, and he told her to get off, she whipped up, and he understood her to say "come ahead," and she drove off the track. He attempted to pass her but the sand pile crowded her on towards the track, and she ran into the car at the rear end.

The front part of the car had passed the buggy without touching. On this last point he is corroborated by a passenger. He says further, that after the accident the car stopped about two minutes. The car could have been stopped in ten feet. Plaintiff in rebuttal denies that she told the driver to come ahead, or saw him before the collision.

The court on motion of the plaintiff, and against the objections of defendant, instructed the jury:

1. That although they might find the plaintiff to have been to some extent negligent, yet if the defendant did, or by reasonable diligence might have discovered the negligence in time, by using ordinary care, to have prevented the injury and failed to use such care, it would be responsible.

*(Approved)*
1. NEGLI-
GENCE:
Contribu-
tory:Coun-
ter negli-
gence.

2.   That the company was responsible for the damages to the property or person of plaintiff, by the wrongful act of its servant in running the car against the buggy, if they should find that he did so, unless they should further find that the plaintiff had been guilty of contributory negligence.

In the first instruction asked by the defendant, amongst other things not objectionable, the court was asked to charge that if the plaintiff knew that the street was occupied by the railway track it was her duty, from time to time, to look behind to ascertain if a car was approaching from the rear, and the failure to do so was contributory negligence, which would preclude her recovery.

In the second instruction asked by defendant it was asserted that the duty of carefulness rested both on plaintiff and defendant, and that if both were negligent and " their conduct was the legitimate result of such negligence," she can not recover.

The third of defendant's proposed instructions asserted the duty of all persons driving along a street, having upon it a line of street railroad, to keep out of the way of the cars, and if the jury should find that plaintiff negligently or carelessly drove so near to the track of the defendant's line of railroad as to be in danger of collision with its cars, and did not exercise due care in watching the approach of the car, this constitutes contributory negligence on the part of the plaintiff, and before the plaintiff can recover, it must be established by a preponderance of testimony that the negligence of the company was the result of a disregard of consequences, or of duty, on the part of the defendant, showing an intent to do an injury."

He asked in his fourth instruction that the court declare "the reasonable speed of a street car to be the average rate of carriages used to convey passengers by horse power."

Citizens' Street Railway v. Steen.

" 5. If the injury sustained was the product of mutual or concurring negligence, no action would lie."

" 6. If the plaintiff contributed to the accident, then she must establish by preponderating evidence that the injury was inflicted by defendant willfully and wantonly."

" 7. That only actual damages, to be shown by positive proof, could be recovered. The plaintiff would not be entitled to exemplary damages unless the injury was the result of wanton, willful and intentional wrong."

All these were refused as asked, but the court modified the second to read as follows:

" The mere fact that the defendant was negligent, will *(Approved)* not entitle the plaintiff to recover, if the plaintiff was also negligent, and that the duty of being careful rests both on the company and the plaintiff; and if the jury find from the evidence that the plaintiff and defendant were both negligent, and that the negligence of the plaintiff was the proximate cause of the injury, she can not recover, and they will find for defendant."

The defendant excepted to this modification.

The court further, upon its own motion, charged the jury that no action could be maintained where there had been mutual negligence, and the negligence of each was the proximate cause of the injury.

It explained to them the meaning of proximate cause to be " negligence directly contributory to produce or bring about the injury."

Further, that though some negligence might be shown *(Approved)* on the part of plaintiff, yet if the defendant, knowing of Counter negligence that negligence, might, by the exercise of ordinary care Ordinary diligence. and prudence, at the time of the injury, have avoided the same, an action would lie for the plaintiff.

The court proceeded to define ordinary care to be, the *(Approved)* use of such watchfulness and precaution as are fairly pro- 2. What is ordinary portioned to the danger to be avoided, judged by the care: Negligence: What is.

standard of common prudence and experience. "Or," the
judge continues, "such care as a reasonably prudent man,
under the peculiar circumstances of the case, would exer-
cise." Upon the other hand, negligence was the failure
to exercise such care and prudence. The jury were told
that it was their peculiar province to settle this question of
diligence or negligence in view of all the circumstances
surrounding the case, the specific degree of care to be
measured by the nature and character of the business, the
appliances, and the dangers ordinarily incident thereto.
The rule requires, not the utmost possible caution and
prudence, but just such degree of it as might reasonably
be expected of persons of ordinarily prudent business
habits, to avoid danger under the circumstances of each
case. They were told that if the plaintiff, by her own
negligence, contributed to the injury, the company would
not be liable unless the injury was willful, or unless it re-
sulted from the want of ordinary care on its part, to avert
it after the negligence of plaintiff had been discovered.
They were advised that the company had the right to run
its cars at any rate of speed that was convenient to it, and
not dangerous to passengers and the public along the
track; and other parties had the right to drive along the
street and cross and recross the track, using proper care
and prudence to keep out of the way of the cars. Other
directions to like effect were embodied in the instructions,
amplifying and elucidating, without varying what is
above set forth.

On the point of damages they were told that they might
find as a measure, " a fair pecuniary compensation for such
injuries as you may find she sustained, to herself and her
property; and, in addition to that, if you find the injury
was willful, or attended with such gross negligence as
manifests a careless disregard of the consequences to

*(Approved)*
3. Street
railroad:
Rate of
speed.

*(Approved)*
4 DAMAGES:
Compensa-
tory: Ex-
emplary.

plaintiff, then you may add such sum as you think proper under the circumstances, by way of vindictive or exemplary damages, or as a punishment for the wrongful conduct of the employé of the defendant."

The motion for a new trial questions the sufficiency of the evidence to support a verdict, and the correctness of the rulings of the court in giving, refusing and modifying instructions.

Upon the evidence we have no hesitancy in saying that it may well support a finding that the injury was unnecessary, easily avoidable by ordinary prudence, and the result of conduct wanton and reckless, if not mischievous and willful. To dash past a buggy in that situation at an unusual rate of speed, the buggy hemmed in a narrow way between a sand bank and the track, containing a woman and child, pressing and eager to get out of the immediate danger, was simply shocking. The jury was entitled to weigh the evidence, and to take this view of it. Street railways are a public convenience. They are to be encouraged and protected in the proper and judicious exercise of their franchises; but they are not entitled to a monopoly of the street, not even to the exclusive use of that part covered by their tracks. They must exercise their rights in fair accordance and harmony with the rights of all citizens and strangers to use the streets for legitimate purposes, with wagons, carriages, buggies, horses, or on foot. Cities, and especially the shopping streets, are necessarily crowded with men, women and children, whose convenience, or necessities, require the use of wheeled vehicles. Amongst the crowds some will, of course, be heedless. There is something revolting in the idea that mere negligence of persons, who must, perforce, be left to take care of themselves or be kept prisoners in houses will excuse a street railway company in smashing their

Citizens' Street Railway v. Steen.

vehicles and endangering their lives, when the driver might fairly avoid it. It is too great a privilege to intrust to employés.

It is enough if persons guilty of negligence are precluded from recovering for injuries brought on by their negligence, and which others, aware of the negligence, might not fairly have avoided.

We have rarely met a case in which the instructions, taken all together, gave a more careful, correct and lucid exposition of the law, in a manner adapted to the comprehension of average jurors. The instructions given cover all the points, and are in accordance with the best authorities, if not, indeed, with all. The principles are directly asserted, or plainly assumed in *St. L., I. M. and S. Ry. Co. v. Hecht, 38 Ark., 369; L. R. and Ft. S. Ry. v. Finley, 37 Ark., 563; St. L., I. M. and S. Ry. v. Freeman, 36 Ark., 41; Evans & Shinn v. Rudy, 34 Ark., 383.* See also, as germane to the principle upon which the damages were measured, *Barlow v. Lowder, 35 Ark., 494; Clark et al. v. Bales, 15 Ark., 452.*

The rule, as laid down in the text book, regarding contributory negligence, and concerning which there is really no conflict, is this, that "the negligence of one party is no reason in itself why he should be punished by the negligent misconduct of another." "In other words, negligent as I may be, if, by due prudence, he could avoid hurting me, he is liable for the hurt his negligence inflicts." "Though I may be a trespasser on his property," says Mr. Wharton, "this does not excuse him in recklessly exploding gunpowder under my feet, or in firing a battery at my head." *Law of Negligence, secs. 335 and 344.*

DAMAGES: Compensatory: Vindictive. And with regard to exemplary damages, resulting from negligent misconduct, the principle collected from numerous authorities, is thus laid down by Mr. Thompson, in his

work on Negligence, volume 2, page 1264: "If it was wantonly or willfully inflicted, or with such gross want of care and regard for the rights of others as to *justify the presumption of willfulness or wantonness*, the court will instruct the jury that they are at liberty to find for the plaintiff, in addition to a reasonable compensation for the injury actually sustained, such a sum in damages as the circumstances justify," and this applies to corporations also. For the negligent *misconduct* of employés see *Ib.*, *p. 1265.*

Whilst street railway companies must, as we have said, be recognized as useful, and protected in all proper exercise of their rights and discharge of their duties in the public service, and whilst they must be absolved from such damages as occur from accidents occasioned by the negligence of others, which the employés of the company could not, in the exercise of due care, have averted; yet they must be held to such a reasonable regard to the lives and property of citizens, however negligent, as would be prompted by a sense of justice and humanity. They are not authorized to resent and punish carelessness, which gives their employés trouble and inconvenience. Their interests are not paramount to those of citizens who walk, or ride horses, or use other vehicles. There must be *mutual* care and *mutual* courtesies in the use of the streets. All cities are crowded with women and children, who necessarily go unprotected to school, to market, or on errands, or shopping, or visiting. Most of them are naturally heedless. The streets are for them also, and they are not to be unnecessarily jostled, frightened, lamed or treated with indignity, because they get upon the railway tracks, to say nothing of danger of life and limb.

I say unnecessarily, for, if unfortunately their carelessness should result in injury, which the employés of the

company could not reasonably foresee or avert, there can be no remedy.

The new trial was properly refused.

Affirmed.