HOT SPRINGS STREET RAILROAD COMPANY *v.* HILDRETH.

Opinion delivered July 2, 1904.

1. NEGLIGENCE—QUESTIONS OF LAW AND FACT.—Where, upon certain facts being established, all prudent and reasonable men would reach the same conclusion as to the duty required, the failure to exercise ordinary care to discharge that duty would be actionable negligence, and the court should always so declare. (Page 576.)

2. STREET RAILWAYS—ORDINARY CARE.—The duty of using ordinary care to prevent injury to persons and property from the running of street cars is reciprocal on the company operating the cars and the general public using the streets; ordinary care being such care as a man of reasonable prudence and caution would use under the circumstances. (Page 578.)

3. SAME—TEST OF NEGLIGENCE.—In the absence of statutory regulations, the test of negligence in the rate of speed, sounding of gong or bell. keeping of lookout, etc., in running a street car is measured by what a reasonably prudent man should do under the peculiar circumstances, considering the danger and injury to be apprehended and avoided. (Page 578.)

4. SAME—NEGLIGENCE.—Where a vehicle is moving on a street beside a street railway track at a safe distance from the track, a person in charge of a street car is justified in presuming that the vehicle will be kept at a safe distance from the track, and the street railway company cannot be held liable for a collision caused by a sudden veering of the vehicle ; but if the driver of such vehicle is not aware of the car's approach, warnings and signals of its approach should be given, and if the vehicle is in such close proximity to the track that danger of collision is imminent, reasonable care in

having the car under control is required of the person in charge of the car.  (Page 578.)

5.  SAME—DUTY TO KEEP LOOKOUT.—Motormen are required to keep a reasonably careful lookout ahead to discover pedestrians and vehicles on or approaching the tracks, so as to be able to take the proper precautions to avoid injuries; and when they see persons on or approaching the track, a failure to give warning by sounding the gong or bell may constitute such neglect as to render the street railway liable for injuries resulting therefrom.  (Page 579.)

6.  SAME—NEGLIGENCE—PRESUMPTION.—In case of a collision between a street car and a vehicle, there is no presumption that it was caused by the negligence of either the driver of the vehicle or of the person operating the car, but the question of negligence is a matter of proof.  (Page 579.)

7.  SAME—FAILURE TO SOUND GONG.—Failure of the motorman to sound his gong is not negligence *per se,* so as to render the street railway liable where the person injured by the car had knowledge of its approach.  (Page 579.)

8.  IMPUTED NEGLIGENCE—WHEN DOCTRINE INAPPLICABLE.—Where one riding as a guest in a private conveyance is injured by the combined negligence of the street car company and of the driver of the conveyance, the contributory negligence of the latter is not imputable to the injured person if he had no authority or control  over such driver.  (Page 579.)

9.  NEGLIGENCE—BURDEN OF PROOF.—The burden of proving negligence is on the plaintiff, and of proving contributory negligence is on the defendant,  unless it is shown by the  testimony of the  plaintiff.  (Page 579.)

10.  STREET RAILWAY—LIABILITY.—It was error to make the liability of a street car company to a person injured in a private conveyance to depend upon the fact of the dangerous proximity of the conveyance, instead of upon the fact that the motorman in charge of the car knew, or by the exercise of reasonable care might have known, of such dangerous situation.   (Page 580.)

11.  INSTRUCTION—RES GESTAE.—An instruction that the statement of the driver of a private conveyance which collided with a street car, made several minutes after the accident, after the street car had left the scene, and after plaintiff had been carried from the place of accident, was not admissible as tending to show that the motorman was blameless, though it was admissible to contradict the testimony of such driver, was correct.  (Page 581.)

12.  NEGLIGENCE—UNAVOIDABLE ACCIDENT.—If the conveyance in which plaintiff was riding when injured was suddenly driven from a position of safety to one of danger immediately in front of an approaching car,

and sufficiently close to it to make it impossible to stop the car and avoid the injury by the exercise of ordinary care, the street railway company was not liable for plaintiff's resulting injury.  (Page 581.)

Appeal from Garland Circuit Court.

ALEXANDER M. DUFFIE, Judge.

Reversed.

### STATEMENT BY THE COURT.

This is a suit to recover damages from the appellant for personal injuries to appellee in a collision between appellant's car and the wagon in which appellee was riding when the injuries occurred.

The company denied negligence, and set up contributory negligence on the part of appellee and the driver of the wagon.

The facts, stated most strongly for appellee, are as follows:

Appellee, a boy 9 years of age, was on a delivery wagon for a ride with the driver, and while the wagon was being driven by the driver along Ouachita avenue, one of the streets of the city of Hot Springs, upon which the street car company had a double track, a car approaching from the rear overtook the wagon, collided with it, and threw appellee to the ground under the wheel of the wagon, and inflicted on him severe and permanent personal injuries.  His arm was fractured near the shoulder, his wrist of the same arm was crushed, one of the fingers of his hand was mashed off, the arm from his hand almost to the elbow was mashed and bruised to the extent that the flesh sloughed off of the back of the hand up to above the wrist joint, and there was a deep lacerated wound under the arm about the arm pit. The arm and hand were left permanently deformed, and their use almost completely destroyed.  The appellee at the time had no control of the driver or the team.  The street on which the collision occurred was narrow, the space on either side of the street car track being about fifteen feet, and was, at the place of collision, very much used by vehicles.  The wagon on which appellee was riding came on to Ouachita avenue from a cross street, and the driver took a position near the center of the street and near the track on which the car was running, and drove along the street parallel to the track, and so close to it that a car could

not pass the wagon without striking it. The driver continued to drive along about the same distance from the track for a distance of 75 or 100 yards after coming on to Ouachita avenue, and until the collision. While so driving, he did not look back to see whether any car was approaching until attracted by the noise of the running of the car, when the car was within twenty-five feet of the wagon, and so close that he could not get out of the way of the car before the collision. The driver immediately after seeing the car turned his horses to the left in an effort to pull away from the track, but before he could do so the car struck the back end of the wagon and knocked it to the left from the track, thereby throwing the front of the wagon to the right and the horses partially across the track. The motorman did not sound the gong at all, and made no effort to check the speed of his car until about the time the car struck the back end of the wagon, when he then put on the brake by turning the crank, and stopped the car within eight or ten feet and as quick as he could. The driver and appellee were sitting on the same seat in the front of the wagon, with their backs to the car, and the motorman was all the time on the front end of the car looking down the track in front of him and towards the wagon. The car was going at its usual rate of speed, and the schedule time required them to make a trip of two and a half miles in twenty minutes, including all stops.

On the other hand, the motorman stated that he saw the wagon, and gave ample warning by ringing his gong; that the wagon as it was going was out of danger from the car, and that, if it had continued along the same distance from the track, the car would have passed without striking the wagon; that he took up the slack in his brake chain, and had the car in condition that he could stop at once; that he was running the car at its usual speed; that about the time he got within six or eight feet of the wagon the horses turned suddenly across the track in front of the car, and he then stopped as quick as he could within eight or ten feet; that he had instructions to always sound the gong when wagons were on or near the track in front of the cars; that he sounded the gong in this case in order to apprise the driver that the car was coming, because he considered it his duty to do so under his instructions; that he did all he could to

prevent the collision after he discovered the wagon in a dangerous position. There was other evidence which corroborated the statement of the motorman.

*E. W. Rector,* for appellant.

It was error to charge that if the motorman failed either to slow up the car or ring his gong, it was negligence. 60 N. Y. 616; 60 N. Y. Supp. 477; 46 S. W. 116; 2 Am. Neg. Rep. 61. The rule that requires one who goes on a railroad track to look and listen applies to electric street railroads. 148 Ind. 54; 49 La. Ann. 1302. Instruction No. 14 asked by defendant should have been given. 13 So. 615; 23 So. 604; 63 N. Y. Supp. 315; 60 *Id.* 477; 82 N. W. 197; 52 Atl. 1090. The defendant is required to observe only ordinary care to avoid the injury. 62 Ark. 164; 64 Ark. 420. Before the plaintiff is entitled to recover, he must prove that the negligence of defendant caused the injury. 4 Am. Neg. Cas. 158; 2 *Id.* 61; 40 S. E. 239; 79 Ga. 463. The court has no right to tell the jury what facts constitute negligence. 34 Ga. 330; 18 S. E. 18; 22 S. E. 709; 25 S. E. 484; 34 S. E. 350; 30 S. E. 433; 61 Ark. 555; 49 Ark. 182; 52 Ark. 368; 54 Ark. 159, 122, 215; 62 Ark. 109.

*Wood & Henderson,* for appellee.

The rule in regard to persons going on a railroad track does not apply to street railways in this state. 69 Ark. 289. If facts are such that all reasonable men would reach the conclusion that a certain duty was required, then the failure to perform that duty would be negligence, and the court may so charge the jury. 144 U. S. 408; 117 Fed. 127; 79 Fed. 744; 139 U. S. 469; 64 Ark. 336.

Wood, J. (after stating the facts). The supreme court of Georgia seems to have committed itself to the doctrine that trial courts have no right to tell the jury what constitutes negligence except in cases "where the law expressly requires or forbids an act to be done, or declares its performance or nonperformance to be negligence." *Mayor, etc., of Milledgeville* v. *Wood,* 40 S. E. 239. In the above case the court says: "We have seen that in this state negligence is a question exclusively for the jury, and that the law so carefully guards the province of the jury in this

respect that even the court cannot either directly or indirectly tell the jury what facts will or will not constitute negligence." This authority is cited by appellant for the condemnation of charges three, four, seven and eleven given at the instance of appellee, in which the court tells the jury that, if certain facts with reference to appellant's conduct in the running of its car are established, the appellant is guilty of negligence. This court has not adopted the broad rule announced by the supreme court of Georgia. In *St. Louis, I. M. & S. Ry. Co.* v. *Spearman,* 64 Ark. 332, we said: "The law fixes the standard for the conduct of reasonable, prudent and cautious men under the circumstances of a case of this kind, and it is the duty of the court to instruct the jury as to the law, and the duty of the jury to regard the instructions of the court, and take them as the law of the case. Were it otherwise, every jury would be at liberty to fix its own standard of negligence or ordinary care, without regard to the instructions of the court as to what might be diligence or negligence." In *St. Louis, I. M. & S. Ry. Co.* v. *Martin,* 61 Ark. 549, we said: "It is equally as well settled, where the facts are undisputed, and there could not in reason and fairness be any difference of opinion as to the conclusion to be drawn from them, that the question of negligence or contributory negligence is one of law." See cases there cited. In *Little Rock & F. S. Rd. Co.* v. *Duffey,* 35 Ark. 602, this court said: "The question of negligence is a mixed one of law and fact, in the determination of which is to be considered whether an act has been done or omitted, and whether, also, the doing or omission of it was a breach of legal duty." In Shearm. & Redf. on Neg. § 53, it is said: "The law imposes duties upon men according to the circumstances in which they are called to act. And though the law defines the duty, the question whether the circumstances exist which impose that duty upon a particular person is one of fact." In other words, the law predicates negligence in each particular case upon the existence or nonexistence of a certain state of facts. Where there is a conflict in the evidence as to whether a given state of facts exists, the jury must settle that conflict, and find certain facts established as true, before the conclusion of law follows.

S C 19

It is undoubtedly the rule that where, upon certain facts being established, all prudent and reasonable men would reach the same conclusion as to the duty required, then the failure to exercise ordinary care to discharge that duty would be actionable negligence, and the court should always so declare. This court has often approved instructions in the form complained of, leaving the jury to find what facts are established, where the facts are disputed, before they are authorized to draw the conclusion of negligence, but declaring that, if certain facts are established, culpable or actionable negligence follows, as a conclusion of law. *St. Louis, I. M. & S. Ry. Co.* v. *Baker,* 67 Ark. 540; *St. Louis, I. M. & S. Ry. Co.* v. *Person,* 49 Ark. 182; *Little Rock & F. S. Rd. Co.* v. *Duffey,* 35 Ark. 602.

The instructions given and requests refused are voluminous, so, to conserve time and space, we will not discuss the rulings of the trial court on these *seriatim,* but will announce the law applicable in such cases. The duty of ordinary care to prevent injury to persons or property from the running of street cars is reciprocal on the company operating the cars and the general public using the streets. Ordinary care is such as a man of reasonable prudence and caution would exercise under the circumstances. *Citizens' Street Railway* v. *Steen,* 42 Ark. 321; Booth, Street Ry. Law, § 305; 27 Am. & Eng. Enc. Law (2d Ed.), p. 59, and authorities cited.

The test of negligence in the rate of speed, sounding of gong, or bell, lookout to be kept, etc., in the absence of statutory regulations. is measured by what a reasonably prudent man should do under the peculiar circumstances, considering the danger and injury to be apprehended and avoided.

"Where a vehicle is moving on a street beside a street railway track at a safe distance from the track, the person in charge of a street car is justified in operating the car on the presumption that the vehicle will be kept at a safe distance from the track, and the street railway company cannot be held liable for a collision caused by a sudden veering of the vehicle; but if the driver of such a vehicle is not aware of the car's approach, warnings and signals of its approach should be given, and if the vehicle is in such close proximity to the track that the danger of collision is imminent, reasonable care in having the car under

control is required of the person in charge of the car." 27 Am. & Eng. Enc. Law (2d Ed.), p. 71, and authorities cited.

"Motormen are required to keep a reasonably careful lookout ahead to discover pedestrians and vehicles on or approaching the tracks, so as to be able to take the proper precautions to avoid injuries." *Id.* p. 63. "Where pedestrians or vehicles are seen by those operating a street car upon or approaching the tracks, warning of the approach of the car should be given by sounding the gong or bell, or otherwise, and the failure to give such warning may constitute such negligence as to render the street railway liable for injuries resulting therefrom." *Id.* p. 65. "Nor is it necessarily negligent to drive a vehicle along a track in the direction from which cars will approach, but when so driving the driver should keep a lookout for cars approaching in the opposite direction, * * * and he should use reasonable diligence to ascertain the approach of cars from the rear; * * * but he is not, as a matter of law, required to keep a constant watch to the rear to discover approaching cars." *Id.* p. 74. "Where a driver of a vehicle has actual knowledge of the approach of a car from the rear, he should use reasonable diligence to leave the track, so as not to obstruct the free passage of the car." *Id.* p. 74.

"In case of a collision between a street car and a vehicle, there is no presumption that it was caused by the negligence of either the driver of the vehicle or the person operating the car, but the question of negligence is a matter of proof." *Id.* p. 70. "Negligence cannot be predicated on a failure to sound the gong or bell, so as to render the street railway liable, where the person injured by the car had, in fact, knowledge of its approach." *Id.* p. 65.

When a person who is riding as a guest or companion of another in a private conveyance is injured by the negligence of the defendant and the contributory negligence of the one with whom the injured is riding, the negligence of the latter is not imputable to the injured person, where such injured person has no authority or control over the person with whom he is riding. 7 Am. & Eng. Enc. Law (2d Ed.), 447.

The burden of proving negligence is on the plaintiff, and of proving contributory negligence is on the defendant, unless it is shown by the testimony of the plaintiff.

The above extracts taken from the American and English Encyclopædia of Law, state correct principles as they have been declared and applied by the courts of this country. See authorities cited in note.

The instructions of the learned trial judge were for the most part in conformity with these principles. We think the third and seventh given at the instance of the appellee, however, are erroneous.* The third had reference to the duty of the motorman in stopping or checking the speed of his car, and the seventh had reference to his duty in ringing the gong. The third fails to make it clear that it was the duty of the motorman to stop or check his car only when he knew, or might have known, by the exercise of ordinary care, that the wagon was in a dangerous position. The seventh also fails to make it clear that it was his duty to ring the gong only under similar circumstances. Under the evidence, it was a question of fact for the jury as to whether the wagon was in a dangerous position, and as to whether the motorman knew, or by the exercise of ordinary care, might have known, of such position. In this particular both instructions are obnoxious to the criticism of counsel for appellee, in that they make the fact of the proximity of the wagon to the railway track, and not the knowledge of that fact by the motorman, "the criterion by which his conduct is to be judged."

---

*Instructions 3 and 7 were as follows:

"3. If you find from the evidence that the driver of Hildreth's wagon was driving said wagon along the street so close to the street car track that a street car could not pass said wagon without striking it, and if you find that one of the defendant's cars came up behind said wagon at a fast rate of speed; and if you find that the motorman in charge of said car saw the position of said wagon as to said track in time to have checked or stopped his car before striking said wagon, then it was his duty to do so; and if you find that said wagon was in a dangerous position as to said car, and that the motorman in charge of said car saw the position of said wagon as to said car, and that he could, by the exercise of ordinary care, have checked his car and avoided a collision, after seeing the dangerous position of said wagon, but failed to do so, then he was guilty of culpable negligence."

"7. If the driver of Hildreth's wagon was driving said wagon along Ouachita avenue so close to the street car track that a car could not pass without striking it, then if one of the defendant's cars came up behind said wagon while it was being so driven, and if the motorman in charge of said car saw the position of said wagon with regard to said track in time to have given sufficient warning of the approach of said car by ringing the gong to enable the driver to get out of the way and to avoid a collision with said car, it was his duty to do so, unless he saw or knew that the driver was already apprised of the approach of said car; and if the motorman failed to give such warning, he was guilty of culpable negligence."—*Rep.*

There was no error in giving instruction No. 12 at the request of appellee.* The evidence showed that the statements of Mahaffey, as testified to by the witnesses named in said instruction, were made several minutes after the accident, and after the car had left the scene and appellee had been carried from the place of accident across the street to the sidewalk, and the witnesses to whom the statements were made had traveled several blocks, after hearing of the accident, to the scene, before said statements were made. The statements of Mahaffey were not *res gestae,* and were only allowable for the purpose of contradicting him, and the court properly so charged.

The court was correct in its rulings upon the requests for instructions on the part of appellant, except the refusal to give the one numbered fourteen, which is as follows:

"14. If you believe from the evidence in this case that when the wagon, with which the street car collided, occupied a position which enabled the car to pass in safety and without striking said wagon, and that while said wagon occupied said position, and while the car was approaching it from the rear, the motorman on said car rang the gong of said car as a warning, and that said driver and plaintiff could have heard the warning by the exercise of ordinary care and attention to it, and after said warning said wagon was driven suddenly in front of said car, and sufficiently close to it to make it impossible to stop said car by exercise of ordinary care and reasonable effort, and said plaintiff was injured by the collision which ensued, he cannot recover in this action."

This instruction certainly announced the law applicable to the evidence that was introduced on behalf of appellant. It presented the converse of propositions of law that had been declared at the instance of appellee on the evidence that had been introduced in his behalf. Each side was entitled to have the law applicable to the facts, from their respective viewpoints, presented to the jury, and there is not a fair trial unless

---

*Instruction No. 12 was as follows:

"12. You cannot consider the statements of Elmer Mahaffey, the driver of the wagon, testified to by Watson, Cooper, Hardy, Wheelock and Rice as evidence in this case tending to show that the motorman was not guilty of negligence in causing the collision. The only purpose for which said evidence was admitted was to contradict said evidence of said Mahaffey, and you can only consider it for that purpose." (Rep.)

this is done. All the judges agree that this request for instruction was correct, and should have been granted, and the majority do not find that any other instructions cover the points presented by this, or, if so, not so clearly or so well. I am of the opinion, however, that there was no reversible error in refusing this request, because instruction number eighteen, given at the instance of appellant, fairly presented the law applicable to the facts from appellant's standpoint, and embraces all the propositions contained in the refused request. Number eighteen is as follows:

"You are instructed that, although you believe from the evidence that the wagon which the street car collided with was driven in front of the car for some distance near the railroad track, but in a place of safety, these facts would not, under the law, make it the duty of the motorman to stop his car, and if you believe said motorman rang his gong on seeing said wagon near said track, as aforesaid, so as to warn said persons on said track on said wagon that the car was approaching, he, the motorman, had a right to anticipate that the wagon would be kept out of danger and give him the right of way, and under the circumstances he would not be called upon to stop the car or to check the same until he saw the driver was ignorant of the approach of the car, and that a collision would likely occur."

A verdict for $3,000, under the facts as they may have been found for appellee, was not excessive.

For the errors indicated the judgment is reversed, and the cause is remanded for a new trial.