## THE PEOPLE *v.* AMBROSE WILLIAMS.

INSTRUCTIONS TO JURY.—Strong expressions, and a manifest attempt at coloring favorable to the defendant, in instructions asked by his counsel, in a criminal case, which state the law correctly, may not be regarded as constituting substantial reasons for refusing the instructions.

GIVING AND REFUSING INSTRUCTIONS.—It is better to give an instruction in a criminal case, which in the main states the law correctly, with modifications if required, than to refuse it, although no error may be committed in refusing it.

INSTRUCTIONS SHOULD APPLY TO FACTS.—It is not error for the Court to refuse an instruction, in a criminal case, which is not pertinent to the facts of the case.

INSTRUCTIONS AS TO REASONABLE DOUBT.—If, on a trial for murder, the fact of the killing is admitted, and the defense rests on the question of the grade of the offense, or whether the defendant was justified in killing on the ground of self defense, instructions on his behalf on the question of reasonable doubt, framed so broad as to include the fact of killing, are not pertinent, and should be refused.

IDEM.—Instructions in such a case, upon the question of reasonable doubt, should apply only to the grade of the offense and the fact of justification.

GIVING SAME INSTRUCTION TWICE.—If the Court has already given the law correctly to the jury upon a given point, it is not error to refuse a second instruction upon the same point.

JUSTIFICATION IN KILLING.—On a trial for murder the Court should not instruct the jury that the defendant was justified if he was in danger of being killed by the deceased and understood and feared such danger; but that he was justified if the circumstances were such as to excite the fears of a reasonable being, and that he acted under the influence of such fears, and not in a spirit of revenge.

RULES OF COURT.—A rule of Court which requires each counsel to submit such instructions as he intends to ask, to the opposite counsel, before his final argument, under the penalty of having the same refused, may in many cases work injustice if strictly adhered to.

RULES OF COURT AS TO INSTRUCTIONS.—Instructions upon a material point in a criminal case should not be refused because not submitted to the opposing counsel before his final argument, in obedience to a rule of Court requiring it to be done.

COURT MAY CONTROL ITS RULES.—Rules adopted by a Court are always under its control, and if there is any reason to apprehend that they will work injustice if strictly adhered to, they should be made to yield to the superior calls of justice.

INSTRUCTIONS AS TO VENUE OF CRIME.—If there is no conflict in the testimony as to the venue of the crime for which the defendant is on trial, instructions upon the subject are out of place.

REPELLING ASSAULT.—In repelling an assault the person assailed should use no more force than is absolutely necessary.

MODIFYING INSTRUCTIONS.—The Court may modify instructions asked by counsel before giving them.

APPEAL from the District Court, Tenth Judicial District, Sierra County.

The defendant was indicted for killing one Samuel R. Eddy, at the County of Sierra, on the 4th day of July, 1866. He was sentenced to the State Prison by the Court, and appealed.

The other facts are stated in the opinion of the Court.

*James A. Johnson,* for Appellant.

The Court should have given the instruction on the question of reasonable doubt asked by the defendant's counsel. (*People* v. *Milgate,* 5 Cal. 130; *People* v. *March,* 6 Cal. 544; *People* v. *Arnold,* 15 Cal. 478; *People* v. *Gibson,* 17 Cal. 284; *People* v. *Eckert,* 19 Cal. 603.) The question of reasonable doubt should apply to the whole case—to the killing as well as the justification. (2 Leading Criminal Cases, by Bennett

& Heard, 536.) The defendant is to be held innocent until proved guilty. It cannot therefore be wrong for the Court to charge that if there is a reasonable doubt of his guilt he should be acquitted.

*Creed Haymond,* also for Appellant.

A defendant is presumed innocent until his guilt is established, and if there is reasonable doubt of his guilt, should be acquitted. If it is said that when the killing is proved doubt does not apply to it, I answer that the prosecution may prove justifying circumstances. It is not the province of the Court to say that the killing is proved, and refuse an instruction on the question of reasonable doubt on that ground. (*Commonwealth* v. *McKie,* 1 Gray, 61.)

*J. G. McCullough, Attorney-General,* for the People.

If the instruction given by the Court on the question of reasonable doubt was not sufficiently specific, the defendant's counsel should have asked a more specific one. (*People* v. *Byrnes,* 30 Cal. 206.) The first instruction refused contains both good and bad law. It was not the duty of the Court to sift the good from the bad. Its terms were too broad. The killing was admitted, and the Court is asked to apply the question of reasonable doubt to this admitted fact. (*People* v. *Cauffman,* 24 Cal. 230 ; *Case of Webster,* 5 Cushing, 320 ; 1 Whar. Crim. Law, Sec. 709.)

By the Court, SANDERSON, J. :

The defendant was indicted for murder, tried, and convicted of manslaughter.

The exceptions taken at the trial all relate to the action of the Court in giving and refusing instructions.

I. The defendant asked the Court to give the following instruction :

" A wide distinction exists between civil and criminal cases

in respect to the degree or quantity of evidence necessary to justify the jury in finding a verdict for the Government. In civil cases their duty is to weigh the evidence carefully and find for the party in whose favor the evidence preponderates, although it be not free from reasonable doubt. But in criminal cases it is far different; the party accused is always entitled to the legal presumption in favor of innocence, which, in doubtful cases, is always sufficient to turn the scale in favor of the accused. It is therefore a rule of criminal law that the guilt of the accused must be fully proven. The burden of proof is upon the prosecution. All presumptions are in favor of innocence, and every person accused of crime is presumed to be innocent until he is proved guilty. If, upon such proof, there is a reasonable doubt remaining, the accused must be acquitted. For it is not sufficient to establish a probability, though a strong one, arising from the doctrine of chances that the fact charged is more likely to be true than the contrary, but the evidence must establish the truth of the fact to a reasonable and moral certainty—a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it. It is not enough that the evidence goes to show the guilt of the accused; it must go further and must be inconsistent with the reasonable supposition of his innocence, or you are bound to acquit the prisoner, in subserviency to that humane maxim of law which, clothed in the language of that good and great Judge, Lord Hale, declares that ‘it is always better to err in acquitting than in punishing—on the side of mercy than on the side of justice.’ ”

This was refused on the ground that it had already been given so far as applicable to the case.

The language is mainly copied from *Webster's Case*, 5 Cush. 320, and aside from a manifest attempt at coloring favorable to the defendant, states the law correctly. “A wide distinction” and “it is far different” are rather strong expressions, and are evidently employed with a view to impress the minds

of the jury with an exaggerated notion of the distinction between civil and criminal cases in the respect named. So on the question of presumption as to the innocence of the accused, an important qualification, limiting them to such as do not arise upon the evidence in the case, employed by Mr. Chief Justice Shaw in *Webster's Case,* is omitted. These matters of difference, however, may not arise above the level of criticism, and may not, therefore, be regarded as constituting substantial reasons for holding that no error was committed in refusing the instruction. There are more satisfactory grounds upon which the ruling of the Court can be sustained.

Doubtless, all things considered, it would have been better to have given the instruction, with some slight modifications; for while, as we shall presently see, it was not error to refuse it, all pretense for an appeal would have been so far removed, and no harm done to the case made by the prosecution. Where such is the case, it is always better to give the instruction.

We think the ruling of the Court must be sustained, upon the ground that the instruction as a whole, was not pertinent to the case made by the evidence, and that so far as it was pertinent, it had already in the main been given to the jury.

The matter of the instruction, so far as it is taken from the charge of Mr. Chief Justice Shaw in *Webster's Case,* had no useful application. *Webster's Case* rested entirely upon circumstantial evidence, and the rules there given for the guidance of the jury were therefore demanded by the exigencies of the case; but in this case the homicide was committed in the immediate presence and view of the witnesses. That the defendant committed the homicide admitted of no doubt whatever. It was the result of a personal encounter, and the defendant himself, while on the witness stand, admitted the killing. Such being the case, the only questions for the jury were, first, whether the defendant was justified in killing the deceased on the score of self defense; and second, if not, what was the grade of the offense?—murder of the first or second degree, or manslaughter? In view of these conditions, an instruction upon the question of reasonable doubt, framed

so broad as to include the fact of the killing, was entirely out of place, and could have served no proper purpose. If of any effect whatever, it would have been so far mischievous because tending to mislead by diverting the minds of the jury from the true points of controversy. The jury had already been instructed upon the question of reasonable doubt as applicable to the grade of the homicide. The Court did not, in its instruction upon that question, in terms include the fact of justification, it is true; but if counsel desired a more specific application of the principle to the latter fact, if allowable (a question not involved here because no such application was requested), they should have asked an instruction directly upon that point. (*People* v. *Byrnes,* 30 Cal. 206.)

II. It is next claimed that the Court erred in refusing to instruct the jury as follows:

" If you believe the defendant was in danger of being killed or receiving great bodily harm at the hands of the deceased, and that the defendant understood such danger and feared it, then, in that case, he was justifiable in killing deceased; and in considering the question whether he was in danger and whether he understood and feared such danger, you should consider and weigh the evidence in relation to the character of the deceased, also the evidence in regard to the threats of deceased made against defendant, and, in fact, should consider every circumstance connected with the unfortunate altercation which ended in Eddy's death."

This instruction was properly refused for two reasons—first, the rule upon the subject to which it was addressed had already been stated by the Court in the precise language of the statute, which it is difficult to improve (Act concerning crimes, Secs. 30 and 31); and second, because it misrepresents the law. It makes the bare fear of the defendant and not the fears of a reasonable person, under circumstances sufficient to excite them, the test of justification, and that, too, unaccompanied by the further and indispensable qualification that he

acted under the influence of such fears and not in a spirit of revenge.

III. It is next claimed that the Court erred in refusing to instruct the jury upon the question of venue, as asked by the defense.

The Court refused to give the instruction on the ground that it was not presented in time, under a rule of the Court which requires counsel having the opening of the argument to submit such instructions as he may intend to ask to opposite counsel, in advance of the argument of the latter, and requires counsel having the reply to submit his in advance of the closing argument of the other side.

Had there been any plausible ground for an instruction upon the question of venue, we should feel inclined to hold that the Court erred in refusing to give the instruction which was requested upon that subject. A Court may undoubtedly regulate the order of its business by rules which do not conflict with law or do not impair the legal rights of parties; but it may be well doubted whether a rule of the character of the one under review may not in many cases work injustice if strictly adhered to. Independent of rules, a party would have a right to submit his instructions at any time before the jury leave the box. Counsel are better advised after hearing the argument than they can be before, and are therefore better prepared to frame their instructions at the close of the argument than at any previous stage of the trial. Counsel have a right to shape their instructions so as to rebut the theories of the other side as well as advance their own, and it may sometimes happen that they cannot do this to their entire satisfaction until after such theories have been fully presented; and it may therefore well be doubted, under all the circumstances, whether a rule which requires counsel to submit their instructions in advance of the argument, or while it is in progress, if it is to be strictly adhered to, has anything to recommend it. It is true that certain general instructions involving matters of definition and the like can be readily prepared before the argument, but the more valuable and useful part of the

charge—that which deals directly with the particular facts of the case and the opposing theories of counsel—cannot; besides the former is generally prepared and given by the Court of its own motion, while the latter receives, or should receive, the especial attention of counsel. It will rarely fail to happen that subjects for instruction, not previously thought of, will be suggested or occur to counsel pending the argument or after its close; and as one of the objects of giving instructions is to present the law of the case fully, and not partially, it would hardly be consistent with that object to reject matters of perhaps vital importance merely because they did not occur to counsel at or before a given stage in the proceedings, and if such was the case here we should feel inclined to hold it error, as being an abuse of discretion. Rules of Court should be framed in furtherance of justice; but they may sometimes, if strictly adhered to, work the other way. They are always under the control of the Court, and if there is any reason to apprehend the latter result, they should be made to yield to the superior calls of justice.

But we are of the opinion that there was no substantial ground for the instruction in question, and that it was therefore properly refused. There was no contest over the question of venue, and although the testimony on that point was not as direct and explicit as it generally is, it was nevertheless ample and sufficient, especially in view of the fact that the defense offered no evidence and made no contest. The testimony of several witnesses was to the effect that the homicide was committed at "Minnesota," and the Coroner testified that he "held an inquest on the body of the deceased in this county, at Minnesota." This proved the venue sufficiently, and in the absence of any conflicting testimony there was no occasion for any instruction upon that question.

IV. It is next claimed that the Court erred in using the following language while instructing the jury upon the law of self defense: "The law carefully measures the amount of force which may be used in repelling an assault, and allows no more than is absolutely necessary."

The point is made against the word " absolutely," and is sufficiently answered by the thirty-first section of the Act concerning crimes, where the precise word is used in the same connection in which it was employed by the Court.

V. The point to the effect that the Court erred in modifying an instruction asked on the part of the defendant before giving it is answered by *Boyce* v. *The California Stage Company*, 25 Cal. 460 ; *People* v. *Dodge*, 30 Cal. 448.

The order denying a new trial is affirmed.


SAWYER, J., concurring specially :

I concur in the judgment upon the other grounds stated in the opinion of my associate, but I dissent from that portion of the opinion which questions the power of the District Court to establish a rule of practice requiring instructions asked by counsel to be handed to the Court for examination before the close of the argument. In some of the District Courts, and probably in most of them, such a rule has been adopted and in force for many years. After some experience as a District Judge, I am satisfied that such a rule is salutary. The Judge in criminal cases is required to reduce his charge to writing, and this must ordinarily be done during the argument of counsel before the jury. It is a great inconvenience to have a long list of instructions kept quietly in the pockets of counsel during the argument handed up to the Judge at the last moment, after his own charge has been written, to be hastily examined and passed upon. It is impossible for a Judge under such circumstances, with an impatient jury and audience waiting for him, to calmly and properly consider and pass upon the instructions. Great liability to err, besides an obstruction to the business of the Court, would almost necessarily result. If counsel have properly prepared their case, there can be little difficulty in preparing all necessary instructions beforehand, and much better than during the excitement of the argument. If the points of the case are not discovered till the close or near the close of the argument, it is not very

likely that instructions will be prepared upon the spur of the moment with that care and precision which the occasion demands. I see no sound objection to a rule requiring counsel to present to the Court instructions which they propose to ask before the argument to the jury. The tendency of such a rule would be to obviate errors—a tendency, perhaps, not always desired by defendants in criminal cases. Our predecessors were of opinion that it was competent for Courts to adopt such a rule. (*People* v. *Sears*, 18 Cal. 635 ; see also *Anderson* v. *Parker*, 6 Cal. 201 ; *Tinney* v. *Endicott*, 5 Cal. 102 ; *People* v. *Tock Chew*, 6 Cal. 636.)