[Sac. No. 1452. In Bank.—October 2, 1907.]

## JAMES PLYER, Respondent, v. PACIFIC PORTLAND CEMENT COMPANY, Appellant.

PRACTICE—JURY TRIAL—SPECIAL VERDICT—AMENDMENT TO SECTION 625 OF CODE OF CIVIL PROCEDURE.—A general verdict implies a finding in favor of the prevailing party of every fact essential to the support of his action or defense, while the very purpose of the special findings, made compulsory in all cases tried by jury, when properly requested, by the amendment of 1905 to section 625 of the Code of Civil Procedure, is to test the validity of the general verdict by ascertaining whether or not it may have been the result of a misapplication of the law to actual findings in material conflict with the findings which in their absence would be implied from the general verdict.

ID.—PROVISION FOR SPECIAL VERDICT TO BE LIBERALLY CONSTRUED.—The amendment to section 625 of the Code of Civil Procedure, requiring special findings in jury trials, when properly requested, should be liberally construed and applied, notwithstanding the supposed inconveniences that may result from its enforcement by reason of mistrials on account of the inability of jurors to agree upon the facts necessary to support their general verdicts.

ID.—REQUEST FOR SPECIAL FINDINGS—GENERAL VERDICT.—Under that amendment, although the court in giving its direction to the jury, should make it plain that they are not required to return findings upon particular questions of fact unless they have agreed upon a general verdict, still the court is not justified in refusing a request for special findings merely because the request did not include the words "in case you find a general verdict," or some similar qualification.

ID.—SPECIAL VERDICTS AND SPECIAL FINDINGS IDENTICAL.—So far as section 625 of the Code of Civil Procedure is concerned, special verdicts and special findings are identical in everything except the name, and it is wholly immaterial if the request of a party happens to be wrongly entitled. What the judge has to determine, from an

examination of the questions themselves, is whether the party presenting them has a right to demand their submission to the jury in the form in which they are presented, and this depends, alike in the case of an issue and in the case of a special fact involved in the issues, upon two conditions—first, Is the question so framed as to admit of a plain and direct answer? and, second, Would an answer favorable to the party preferring the request be inconsistent with a general verdict for his adversary? If these conditions are satisfied, the request should be granted, whether an issue is called a question of fact, or a question of fact is called an issue—whether the request relates to one question or issue, or to several questions or issues, or to one or more of each kind. The court cannot, however, be compelled to repeat the same question in different forms.

ID.—FUNCTION OF SPECIAL VERDICT.—The term "special verdict," as used in section 625 of the Code of Civil Procedure, does not mean what it originally meant in the common-law practice,—viz., a finding upon every material issue in the case. The section authorizes the demand for special verdicts on any one or more of the issues or particular questions of fact, not for the purpose of determining what judgment shall be entered, but primarily and principally for the purpose of determining whether the general verdict is or is not against law.

ID.—INTERROGATORIES NEED NOT BE SUBMITTED TO ADVERSARY.—Under that section there is no requirement, express or implied, that the interrogatories shall be submitted to opposing counsel. The court, however, is free to submit them to the opposite party if he thinks it desirable to do so before ruling on the request.

ID.—FORM OF INTERROGATORIES.—Section 625 of the Code of Civil Procedure does not require the interrogatories to be so framed that the jury may answer by a simple yes or no, and the omission of this requirement evinces an intention to leave something more to the discretion of the court. The court should, however, refuse to allow an unmeaning or confusing question.

APPEAL from a judgment of the Superior Court of Solano County. L. G. Harrier, Judge.

The facts are stated in the opinion of the court.

C. H. Wilson, Peter F. Dunne, A. A. Moore, and Stanley Moore, for Appellant.

Frank R. Devlin, for Respondent.

BEATTY, C. J.—This is an action for damages for personal injuries in which the plaintiff recovered a judgment for

twenty-five hundred dollars, from which the defendant appeals.

The only questions presented for decision arise out of the refusal of the trial judge to direct the jury to return a special verdict upon certain issues or particular questions of fact. A number of rather technical objections to the form and manner and time of presenting the request for this direction are urged by respondent in justification of its refusal, and in order to a proper consideration of most of these objections it will be necessary to state in some detail the circumstances of the case. The defendant owns and operates a quarry and plant for the manufacture of cement. The plaintiff was employed as a carpenter in and about the plant. In the most elevated portion of the works—known as the "Rock Crusher Building" —was a large bin for the reception of rock from the quarry. Over the bin was a platform, to reach which it was necessary to pass along a plank walk fifteen feet in length and three feet wide, extending from the outer wall of the building to the side of the bin, and from that point to ascend a ladder about nine feet in height. The walk was suspended nineteen feet above the cement floor of the building, and was unprovided with rails or guards. In May, 1904, defendant's foreman called upon the plaintiff and two other carpenters to go with him to the platform over the bin and to bring their tools for the purpose of doing some work there. The plaintiff, according to his own testimony was forty-two years of age and, as a carpenter, was used to stagings and ladders. He had been upon the platform before for the purpose of repairing a beveled wheel, had passed over the same places and knew the situation perfectly. On this occasion he went with the foreman and the other carpenters to the platform as directed, but when there they found that the place was so obscured by smoke from the furnaces that they could not see to do the work. An attempt was made to turn on some incandescent lights, but there was no current, and the foreman descended for the purpose of turning on the current at the switch, but was unable to do so by reason of the fact that there was no current there. He then returned to the platform, but the plaintiff and his two companions on account of the increasing smoke had descended the ladder for the purpose of leaving the building. His companions passed the walk in safety, but

plaintiff, who was the last to leave, lost his footing at the bottom of the ladder and fell to the floor of the building, sustaining the injuries here complained of.

The grounds of the action, as stated in the complaint, were that the platform where plaintiff was directed to work was an unsafe, unsuitable, and dangerous place, and the means of ascending to, and descending from, the platform were dangerous, unsuitable, and unsafe, all of which was known to the defendant and unknown to plaintiff; that the plank walk was unsafe for want of rails and guards, which it was the duty of defendant to provide; that while the plaintiff was on the platform in obedience to the direction of the foreman and exercising due care defendant carelessly and negligently caused and suffered a great volume and quantity of dense smoke to arise and envelop the space in and about said plank walk, ladder, and platform, rendering it impenetrable to sight, and causing partial suffocation of plaintiff and endangering his life if he remained, thus rendering it necessary for him to descend the ladder in the dark, by reason of which, in stepping from the ladder to the plank walk, he missed his footing and fell, thereby sustaining the injuries in question.

The bill of exceptions contained in the record does not purport to embrace all the evidence introduced at the trial, but it shows that there was a conflict of evidence as to the issues above stated, and it clearly appears from the plaintiff's own testimony that there was nothing dangerous about the platform, plank walk, or ladder to a man of his calling and experience, or at least that he was perfectly aware of the situation and assumed the risk, such as it was, except that caused by the smoke escaping from the furnaces—a danger of which he was wholly unaware at the time of the accident In short, it may be said that both by the pleadings and the evidence, so far as detailed in the record before us, the crucial question to be decided by the jury in arriving at a general verdict, was this: Was there a sufficient appearance or threat of danger arising from the increasing density of the smoke to justify the plaintiff in attempting to descend from the platform while it was too dark for him to do so with safety? Upon this point the only evidence in the record is that of Cowles, one of the carpenters who was with plaintiff, and

who was called as a witness by him, who testified that the smoke was disagreeable but not dangerous. In this state of the case the defendant before the introduction of any testimony by it presented the following written request to the court:

"(Title of Court and Cause.) Request for special findings by the jury upon particular questions of fact.

"The court is hereby respectfully requested to direct the jury to find a special verdict in writing upon the following issues in this case, to wit:

"First: Was the accident and injury complained of caused by the failure of defendant to provide rails or guards on the plank walk described in the pleadings and evidence?

"Second: Was the accident and injury complained of caused by a great volume and quantity of dense smoke arising and enveloping the space in and about the plank walk and ladder described in the pleadings and evidence?

"Third: If you answer the last interrogatory in the affirmative, was the smoke alone of such a character as to threaten plaintiff with great bodily injury, or justify him in really believing that he was threatened with such great bodily injury as to require prompt action on his part to escape such injury?

"Fourth: Did plaintiff see and know, when he first went upon the plank walk described in the pleadings and evidence, that there were no rails or guards on said plank walk?"

When this request was presented to the court no copy had been served on plaintiff, and it was understood that it was not to be submitted to him or his attorney. At the close of the morning session of the court plaintiff objected to the submission of any special issues. At the opening of the afternoon session the request of defendant was submitted by the court to plaintiff's attorney, and he was furnished with a copy by defendant's attorney a few minutes before he commenced his argument to the jury, whereupon he filed his specific objections to their allowance, before commencing his argument. At the close of the argument, the court instructed the jury upon the matters of law involved in the case, and at the close of the instructions said: "To the attorneys, I will say, I shall take the chances myself and decline to direct the jury to find special verdicts as requested by the defendant, upon the ground that they are unnecessary for the final

CLII Cal.—9

determination of the case and must necessarily be included in the general verdict, whichever way it is found.'' To which ruling the defendant excepted. Whereupon the jury retired and returned a general verdict for twenty-five hundred dollars.

The ground upon which the court refused to direct the jury to make the special findings requested by the defendant was: not included among the objections specified by the plaintiff's attorney and is not relied upon by respondent here. It is. perhaps unnecessary under the circumstances to say that the ruling was based upon an evident misconception of the sole purpose of the then recent amendment to section 625 of the Code of Civil Procedure making the submission of special issues and particular questions of fact, when properly requested, compulsory in all cases tried by jury.

It is of course true, but no truer to-day than it always has. been, that a general verdict implies a finding in favor of the prevailing party of every fact essential to the support of his action or defense, and the very purpose of special findings is. to test the validity of the general verdict by ascertaining whether or not it may have been the result of a misapplication of the law to actual findings in material conflict with the findings which in their absence would be implied from the general verdict. In other words, the response of the jury to the special issues or particular questions of fact may show that no judgment can properly be entered in favor of a plaintiff upon a general verdict because the jury has not found in his favor upon some material issue, or has found against him as to some fact fatal to his cause of action, and in case of a general verdict for a defendant the special findings, together with the facts admitted on the record may show that the plaintiff is entitled to a judgment notwithstanding the general verdict against him. These are but illustrations of a. great variety of cases, frequently occurring, in which special findings would show that a general verdict is a verdict against law, upon which it would be the duty of the court either to enter no judgment at all because the findings were insufficient to support a judgment for either party, or because the party against whom the general verdict was returned would be entitled to a judgment *non obstante*. The legislature, recognizing these conditions, and in view of the great and growing

difficulty which jurors encounter in the effort to apply to facts—plain enough in themselves—the law given to them in the form of voluminous instructions abounding in nice distinctions, often imperfectly stated, and of doubtful meaning even to those who have had the advantage of professional training, has wisely determined that upon the proper request of either party to an action the court *must* direct the jury if they return a general verdict to give answers to any material question, or questions of fact, which will enable the court, in the exercise of its proper function, to apply the law to the real facts of the case as they have been actually found, instead of recording a judgment wholly unsupported by the facts. It is not a question with the courts whether this law should be enforced, but some question seems to be made whether it should be liberally construed and applied, or narrowly construed, and hampered in its application on account of the inconveniences which it is supposed to involve. The most serious fault imputed to it is that its enforcement will often result in mistrials on account of the inability of jurors to agree upon the facts necessary to support their general verdicts. This, so far from being a fault, is to my mind the crowning virtue of the amendment referred to, as it is its sole justification. Jurors are not supposed to be skilled in the interpretation of the law, and they may often make mistakes in applying it to a given state of facts, but the concurring judgment of twelve men as to the effect of conflicting evidence upon an issue of fact is accorded great weight and is generally conclusive. If in any case a jury is unable to find that a material fact has been proved, no man should be allowed to profit or be condemned to suffer by the implied existence of such fact, resulting from the return of a general verdict; and if a fact has been proved fatally at variance with their general verdict, no man should gain or lose by the necessity of inferring its non-existence in the absence of a specific finding. In either case the worst effect of the due operation of the amended statute would be the immediate and just award of a new trial, while the result of its non-enactment, or the failure to apply it would be, at best, an order for a new trial, after a long and troublesome proceeding, and at the worst a cruel and irremediable injustice to the losing party consequent upon the refusal of a new

trial. Between these alternatives it is difficult to suppose that any tribunal, legislative or judicial, could hesitate which to choose. I at least, speaking from long experience as a trial judge and member of courts of review, am firmly convinced that the amended law was wisely enacted, and that its operation, if liberally construed and freely applied, as all remedial statutes should be, especially in matters of procedure, will be to prevent many miscarriages of justice, at the same time that it will eliminate much of the trouble and delay hitherto experienced in disposing of motions for new trials based upon the ground that the verdict is against the evidence.

Coming now to the specific objections of the plaintiff to the defendant's request for special findings, the first to be considered is the failure of defendant to make his request conditional. The meaning of this objection is that since the court can only require the jury to answer particular questions of fact in case they return a general verdict, the request in this instance was fatally defective because it did not include the words: "in case you find a general verdict," or some similar qualification. In Clementson on Special Verdicts, p. 63, decisions are cited from one or two states having statutes substantially the same as ours, sustaining the denial of instructions to return special findings upon this narrow ground. It seems to me that this is not only carrying construction to the extreme verge of strictness in a spirit of hostility to the act, but that it imposes upon its language a meaning that it does not disclose. It is true that the court in giving its direction to the jury should make it plain that they are not required to return findings upon particular questions of fact unless they have agreed upon a general verdict, but since the judge knows this as well as counsel, there seems to be no reason why he should be reminded of the necessity of so framing or qualifying his direction every time it is requested. The objection implies that it is the imperative duty of counsel to put in writing, not only the questions to which they require answers and their request for their submission, but also the language in which the direction of the court to the jury is to be couched; and that the minutest failure on their part to frame the direction properly will deprive them of any right to complain of a refusal to give it. There is no necessity for imposing upon the statute so narrow a construction. It may with much more

reason be held that counsel have only to frame a proper request and that it then becomes the duty of the court to give in its own language the short and simple direction prescribed by the statute. For a court to refuse to submit special questions of fact, wholly unobjectionable in themselves, for the sole reason that the party requesting their submission has omitted to write out a proper form for the direction to the jury, would be, to my mind, not merely an abuse of discretion, but a plain violation of the statute.

Respondent contends that the statute (Code Civ. Proc., sec. 625) makes a clear distinction between issues, and particular questions of fact, and complains that the defendant by entitling his request for special findings: ''Request for special findings by the jury upon particular questions of fact,'' and by following this up by a request that the jury be directed to find a special verdict in writing upon ''the following issues in the case,'' has rendered it uncertain whether it was a request for a special verdict or for findings upon particular questions of fact; and his argument seems to imply that such requests must be for one thing or the other exclusively, i. e., either a request for a special verdict upon some or all of the issues, or for findings upon particular questions of fact. There is undoubtedly a distinction between issues and particular questions of fact. An issue of fact arises whenever an allegation of one party is denied, or deemed denied by the other. The issue, however, may not always relate to a fact incapable of being resolved into two or more essential elements, a failure to prove either of which would leave the issue unproven. In such a case a special finding upon any single essential element of the issuable fact inconsistent with the general verdict would be as fatal as a special verdict upon the broader issue. Again, under our rules of pleading, there is no replication to the answer even when it consists of nothing but a plea in avoidance. Every material fact in support of the plea is, however, deemed denied, and therefore constitutes an issue on the record. But the plaintiff may at the trial meet such a defense not only by evidence in rebuttal of the evidence offered in its support, but by proof of some fact in avoidance which he has had no opportunity to plead, and as to which there is no formal issue. In such a case a finding in favor of the plaintiff on that particular question of fact would be as fatal

to a general verdict for the defendant as a special verdict on any issue in the case. Other illustrations might be given of special questions arising in a case as important and as vital as the issues in which they are involved. It is because such questions frequently arise that the statute has given parties the same right to demand responses to them that they have to demand special verdicts as to any or all of the issues. So far, therefore, as section 625 of the Code of Civil Procedure is concerned, special verdicts and special findings are identical in everything except the name, and it is wholly immaterial if the request of a party happens to have a wrong label. The court is not hampered and ought not to be confused by a request for a special verdict upon a particular question of fact, or a special finding upon a formal issue. What the judge has to determine from an examination of the questions themselves, is whether the parties presenting them have a right to demand their submission to the jury in the form in which they are presented, and this depends, alike in the case of an issue and in the case of a special fact involved in the issues, upon two conditions: 1. Is the question so framed as to admit of a plain and direct answer? and 2. Would an answer favorable to the party preferring the request be inconsistent with a general verdict for his adversary? If these conditions are satisfied, the request should be granted whether an issue is called a question of fact or a question of fact is called an issue; whether the request relates to one question or issue or to several questions or issues, or to one or more of each kind. Of course, what is here said must be understood with the qualification that the court would not be compelled to repeat the same question in different forms.

Another objection of the respondent to defendant's request is that his interrogatories were not addressed to any issue in the case, and therefore no special verdict could be rendered thereon. The argument on this point seems to be that no possible answer to the four interrogatories would have been sufficient to sustain a judgment for either party, and the assumption is that the term ''special verdict'' as used in the statute means what it originally meant in the common-law practice, viz. a finding upon every material issue in the case. But the term is not used in that sense in the statute, which authorizes the demand for special verdicts on any one or more

of the issues or particular questions of fact, not for the purpose of determining what judgment shall be entered, but primarily and principally for the purpose of determining whether the general verdict is or is not against law. In this case the third and fourth interrogatories were directed to issues plainly made by the pleadings, the first and second to questions involved in an issue, viz. the cause of the injury. Altogether they covered two distinct issues, and the essential facts involved in another issue, and it is not a valid ground of objection that they did not cover all the issues.

Again, it is objected by respondent that the interrogatories were not submitted to him in seasonable time. The statutes in some of our sister states require a request for special findings to be submitted to the opposing party before the argument. Our statute omits this requirement. Nevertheless, the interrogatories in this case were submitted to counsel for the plaintiff long enough before he commenced his argument to enable him to frame and file his objections to their allowance. Considering that they embraced no questions that he could have omitted to discuss in his argument, even if the special findings had not been requested, it could not be held that they were submitted too late even if we were to import into the statute a provision which the legislature has chosen to omit. There is no requirement, express or implied, in our law that the interrogatories shall be submitted to opposing counsel, any more than that a request for a special instruction shall be so submitted. Each party has the right to ask his questions and to propose his instructions in his own terms and without interference of the opposing party. The court, however, is free to do what was done in this case, that is to submit the interrogatories to the opposite party if he thinks it desirable to do so before ruling on the request.

It is further objected that the proposed interrogatories were confusing, and for that reason properly refused. This objection is more particularly directed to the first and second questions. It is said, and it is true, that the complaint does not charge that either the absence of rails to guard the walk or the smoke filling the space about the platform was the sole cause of the injury, but on the contrary that it resulted from the combined and concurrent operation of both causes, and it is argued that it was therefore impossible for the jury to have

truthfully answered either question by a simple "yes" or "no." The argument assumes that an interrogatory must always be so framed that it can be answered in this simple and categorical form, and also assumes that a case necessarily retains the same aspect after the evidence has been heard that is presented by the complaint. But our statute, unlike the statutes in some of the other states, does not require the interrogatories to be so framed that the jury may answer by a simple "yes" or "no," and the omission of this requirement evinces an intention to leave something more to the discretion of the court. It is no doubt true that a court should refuse to allow an unmeaning or confusing question, just as it should refuse an unmeaning or confusing instruction upon a question of law. But it would be absurd for a court which daily assumes that jurors are perfectly capable of understanding the instructions commonly given for the purpose of enabling them to apply the law to the facts in framing a general verdict, to hold at the same time that their capacity in dealing with questions of fact is so limited that they cannot, when the occasion arises, say "yes" or "no" with the necessary qualification. Take this case as an illustration. If the evidence was sufficient to prove the facts exactly as they were alleged in the complaint, the first and second questions could each have been answered by so short and simple a formula as "yes, but not solely," or by "partly but not wholly." Are we going to base a construction of the law upon the supposition that among twelve men, each assumed to be capable of applying the law of negligence to the facts in issue here, involving the nature of the action, the rules as to assumed risks and contributory negligence, not one could be found capable of answering these questions as counsel say they could only have been truthfully answered? I do not rate the intelligence of jurors so low. But in view of the evidence contained in the record (and it is assumed to contain so much of the evidence as is necessary for a proper review of the exceptions) the jury might truthfully have answered the first interrogatory in the negative because the plaintiff himself testified that he knew that the walk was unguarded, he assumed the risk of passing over it, and would have done so in safety except for the smoke, which was therefore in a just sense the sole cause of the injury. Suppose then the jury had said "yes" to the first question

and "no" to the second, they could only have said "yes" to the fourth and everything would have depended on their answer to the third. Was the danger of remaining on the platform sufficient in fact to justify the plaintiff in encountering the known danger of the unguarded walk? Since all the evidence in the record is to the effect that there was no danger in the smoke, the jury certainly might have said "no" to the third question, an answer which would have invalidated their general verdict.

It is contended that if even one of the four questions proposed was improper, it was right to refuse them all. Being of the opinion that none of these interrogatories was improper, I do not think it necessary to consider this question.

The judgment of the superior court is reversed and cause remanded.

Lorigan, J., McFarland, J., Shaw, J., and Henshaw, J., concurred.

ANGELLOTTI, J., dissenting.—I dissent. Conceding that the amendment of section 625 of the Code of Civil Procedure, whether it is in our judgment a wise provision or not, should be liberally construed with a view to accomplishing the object of its enactment, I am satisfied that it should not be construed in such a manner as to deprive a trial court of the power to refuse to submit to the jury interrogatories which, under the circumstances of the case, may be misleading and confusing. To my mind this was clearly the situation in the case at bar as to questions Nos. 1 and 2. Question No. 3 was so framed as to be entirely dependent on the answer to question No. 2, and was properly refused for that reason. An answer to question 4 favorable to defendant would not have been inconsistent with the general verdict in favor of plaintiff, and defendant cannot be held to have been prejudiced by the refusal of the court to submit the same, even if it be conceded that it should have been submitted under a proper construction of the law.

Sloss, J., concurred.