[Civ. No. 442. Second Appellate District.—April 28, 1908.]

## HENRY LARSEN, Respondent, v. CARL LEONARDT, Appellant.

NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—SPECIAL ISSUES—FAILURE TO FIND—GENERAL VERDICT—REVERSAL OF JUDGMENT—NEW TRIAL.— In an action involving questions regarding the alleged negligence of an employer, causing personal injuries to a servant, and regarding the contributory negligence of the servant, in which special issues were submitted to the jury under the authority of section 625 of the Code of Civil Procedure, together with the general form of verdict, the defendant is entitled to a finding upon all of the special issues, and the failure of the jury to find upon eight out of the twelve special issues submitted requires that the judgment upon the general verdict for the plaintiff be reversed and the cause remanded for a new trial.

ID.—FAILURE TO FIND UPON CONTRIBUTORY NEGLIGENCE—GENERAL VERDICT CONTRARY TO INSTRUCTION.—Where one of the issues submitted read: "Was the unsecured condition of the plank, from which plaintiff fell, open to the view and observation of the plaintiff, and could the plaintiff have found out the unsecured condition of said plank by looking at it?" And the court properly instructed the jury that an employee assumes the risks of a danger which he knew, or which was so obvious that he must have known, and that "if the plaintiff failed to use ordinary care for his own protection— did not look out properly for himself, that he was guilty of contributory negligence"—if the jury were unable to find upon that issue, they were not entitled to render a general verdict in favor of plaintiff, contrary to the instruction bearing upon that issue.

ID.—IMPLICATION FROM GENERAL VERDICT—PURPOSE OF SPECIAL VERDICT. The general verdict implies a finding upon every essential fact; and the purpose of requiring answers to special questions submitted to the jury is that it may be determined whether or not the jury would be able to find in favor of the plaintiff upon the separate elements of the case as presented, as well as to render a "lump verdict" in his favor which might conceal some mental reservations.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. W. P. James, Judge.

The facts are stated in the opinion of the court.

Hunsaker & Britt, for Appellant.

Edwin A. Meserve, and Paul H. McPherrin, for Respondent.

TAGGART, J.—Action for damages for personal injuries. Defendant appeals from judgment for plaintiff and from an order denying his motion for a new trial.

Plaintiff was a hodcarrier or brickmason's helper in the employ of defendant, who was a contractor engaged in the erection of a large building in the city of Los Angeles. Plaintiff fell from a scaffold because of stepping upon a loose plank which was insecurely laid on the cross-beams, or putlogs, which supported the floor of the main or permanent scaffold, extending clear across the building, used by the bricklayers and their helpers in laying up the brick in the walls of the building. When the work on the main scaffold reached a stage called "scaffold high," temporary scaffolding, consisting of four ten-inch planks fourteen feet long, was laid upon trusses which were set upon the main scaffold, and were used by the bricklayers to stand upon while laying up the arches to the windows. This temporary scaffolding was moved from arch to arch by the bricklayers and their helpers, and the loose plank which caused plaintiff to fall was moved along with the temporary scaffolding and thrown down alongside of the floor of the main scaffold.

While the masons were on the temporary scaffold the bricklayers' helpers continued to stand upon the main scaffold and to pass up brick and mortar to the brickmasons on the temporary scaffold. Plaintiff had been handing up brick at the end of the temporary scaffold, and was called to supply brick to the mason who was working near the center of the arch, and in attempting to pass around the end of one of the trusses, standing upon the main scaffold, so as to be able to hand up the brick from a point near the center of the temporary scaffold, stepped upon the insecure plank, which laid about a foot from the floor of the main scaffold, and was thrown to the ground and injured. It is for damages for this injury that this action was brought.

Quite a number of questions are presented upon this appeal, and as to the determination of some of them the members of this court are not all able to concur. There is one reason,

however, which all agree requires that the judgment be reversed and the cause remanded for a new trial, and that is the failure of the jury to find upon certain of the special questions which were submitted to them, with the general form of verdict. Of the twelve questions propounded but four were answered directly. The rest were answered evasively, or, in effect, by "we do not know," or "are unable to determine."

The sixth special question was answered, "Under the evidence submitted, we are unable to determine." The question being: "Was the unsecured condition of the plank from which the plaintiff fell open to the view and observation of the plaintiff, and could the plaintiff have found out the unsecured condition of said plank by looking at it?" The court instructed the jury that an employee assumed the risks of a danger which he knew or which was so obvious that he must have known, and that, if the plaintiff "failed to use ordinary care for his own protection—did not look out properly for himself" —that he was guilty of contributory negligence. This is the law. (*Kenna* v. *Central Pac. R. R. Co.*, 101 Cal. 26, [35 Pac. 332] ; *Brett* v. *Frank & Co.*, 153 Cal. 267, [94 Pac. 1051].)

If the jury were "unable to determine" from the evidence whether or not the condition of the plank was open to the view of plaintiff, we are at a loss to know how they could render a general verdict in his favor under the instructions of the court. If the jury were unable to find positively that a fact material to the general verdict had not been proven, the plaintiff was not entitled to the verdict, since his case lacked this essential element. The general verdict implied a finding in favor of plaintiff of every fact essential to the support of his cause of action, and the purpose of requiring answers to these special questions was that defendant might determine whether or not the jury would be able to find in favor of plaintiff upon the separate elements of the case when so presented, as well as to render a "lump" verdict in his favor which might conceal some mental reservations. (*Plyler* v. *Pacific Portland Cement Co.*, 152 Cal. 125, [92 Pac. 56].)

The questions were such as were authorized by section 625 of the Code of Civil Procedure, and defendant was entitled to have them answered. To permit them to be evaded was to deprive the defendant of a statutory right. Such answers as

were given to questions 1, 2, 5, 6, 7, 10, 11 and 12 did not meet the requirements of section 625, and, if allowed, would operate to fritter away and destroy the intention of the legislature in amending the section.

Any expression of the views of the respective members of the court upon the questions of law as to which all do not agree would be useless, since such opinions would not become the law of the case and could not serve as a rule or guide upon a retrial of the cause.

Judgment and order reversed, and cause remanded for a new trial.

Allen, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 27, 1908.