[Civ. No. 730.   Second Appellate District.—December 16, 1909.]

SAVORO FUJISE and TSUGI FUJISE, Minors, by Their Guardian ad Litem, H. NAKAZONO, and Y. FUJISE, Respondents, v. LOS ANGELES RAILWAY COMPANY, a Corporation, Appellant.

NEGLIGENCE—ACTION FOR DEATH—COLLISION OF STREET-CAR WITH WAGON —PASSENGER IN WAGON—CONTRIBUTORY NEGLIGENCE OF DRIVER.— In an action by the heirs of a deceased woman killed while riding in a wagon, as passenger, by collision of a street railway car with the rear end of the wagon crossing the track, the contributory negligence of the driver of the wagon is not imputable to the deceased, in the absence of a showing of her personal negligence or that of someone over whom she exercised control.

ID.—QUESTIONS OF FACT.—Whether the deceased was guilty of contributory negligence is one chiefly of fact, and whether or not she used ordinary care must be determined by the jury from the circumstances of the particular case.

ID.—FAILURE OF DECEASED TO LOOK—PRESUMPTION OF CARE OF DRIVER— CONTRIBUTORY NEGLIGENCE NOT MATTER OF LAW.—It cannot be said, as matter of law, that the failure of the deceased to look to ascertain the position of the car before the wagon turned across the track was contributory negligence. The deceased had the right to assume that the driver was competent, and that he would not put the wagon in a perilous position.

ID.—PRESUMPTION FROM NONRESIDENCE OF DEFENDANT—FAMILIARITY OF DRIVER WITH LOS ANGELES STREETS.—It must be presumed from the residence of defendant elsewhere that she was less familiar than the driver with the congested condition of the business streets of Los Angeles and with the effect thereof; and in the absence of unusual peril apparent to her and not to the driver, or to which they were equal strangers, it will be presumed that she pursued the safer plan in letting the driver take care of his own horse.

ID.—FINDINGS—IMPLICATION FROM GENERAL VERDICT—BURDEN OF PROOF AS TO CONTRIBUTORY NEGLIGENCE.—A special finding upon the failure of the deceased to look before the wagon crossed the track is not inconsistent with the general verdict implying that it was not her duty to look; and a finding that there is no evidence upon a special issue whether she exercised ordinary care to avoid the collision is not inconsistent with the general verdict, and is also subject to the rule imposing the burden of proof upon the defendant to show affirmatively the contributory negligence of the plaintiff.

ID.—SUBMISSION OF SPECIAL INTERROGATORIES—RULES—TIME OF PRESENTING.—The submission of special interrogatories to the jury is not governed by the analogy of a request for special instructions, and proper interrogatories cannot be properly refused merely because they were not presented in time.

ID.—TEST OF SPECIAL FINDINGS.—The special findings which the parties were entitled to have made by the jury under the provisions of section 625 of the Code of Civil Procedure, as that section read when the case was tried, were addressed to matters relevant to the essential issues impliedly found by the general verdict, and were subject to two conditions, viz., that the question must admit of a plain and direct answer, and that an answer favorable to the party proposing the request would be inconsistent with a general verdict for his adversary.

ID.—ERROR IN REFUSING TO SUBMIT SPECIAL ISSUES AS TO CARE EXERCISED BY MOTORMAN.—Where there was evidence tending to show care on the part of the motorman to avoid the injury, it was error for the trial court not to submit special issues at defendant's request, which, if answered in favor of the defendant, would be inconsistent with the general verdict for the plaintiff as matter of law.

ID.—RIGHT TO USE OF STREET BY VEHICLES AND STREET-CARS.—Streetcars and citizens traveling in vehicles drawn by horses or other animals both have a right to use the street, but neither has the exclusive right. The motorman of a street-car who sees a man driving a vehicle in front of the car need not stop the car, but may run it in a proper manner, assuming that the vehicle will turn aside out of the way of the car, but when conscious that he is heedless of danger, the motorman cannot rest on that assumption so long as to allow his car to reach a point where it will be impossible to control the car or give warning in time to prevent injury to the man or vehicle.

ID.—VEHICLE TURNING INTO TRACK IN FRONT OF CAR—BURDEN ON PLAINTIFFS TO SHOW NEGLIGENCE.—In a case where the alleged negligence of a motorman consists of an omission of duty suddenly and unexpectedly arising from the driving of a vehicle in front of the car upon the track without warning, it is incumbent upon the plaintiffs to show that the circumstances were such that the motorman had an opportunity to become conscious of the facts giving rise to the duty, and a reasonable opportunity to perform it before the railway company can be held liable on the ground of negligence.

ID.—REQUESTED INSTRUCTIONS.—*Held*, that a requested instruction, based upon the testimony of the motorman, should have been given, and that the defendant was entitled to have the jury instructed that the deceased was required to use ordinary care for her own safety, under the circumstances, but not that she must necessarily look or listen or direct or attempt to control the driver, after having selected one

whom she had a right to assume to be competent, careful and prudent, and whom she had not found to be otherwise.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

Gibson, Trask, Dunn & Crutcher, for Appellant.

Ernest E. Wood, for Respondents.

TAGGART, J.—Action brought by heirs of a deceased person to recover damages for her death alleged to have been caused by the negligence of defendant's employees in operating one of its street-cars. Judgment was for plaintiffs for $2,000, and defendant appeals from the judgment and an order denying its motion for a new trial.

Plaintiffs are the husband and children, respectively, of Hideno Fujise, who, while riding in an express wagon on Central avenue in the city of Los Angeles, was thrown from the wagon by a collision between it and one of the defendant's street-cars, which was operated upon a track along said street or avenue. The car approached and overtook the wagon from the rear. At the point where the collision occurred market wagons were ranged along either side of the street, engaged in loading with produce, and for this purpose were backed against the curb so that the heads of the horses extended out into the street, and the teams and wagons together occupied a large portion of the roadway between the curb and defendant's double tracks along the middle of the street.

The errors upon which appellant relies for a reversal of the judgment are: That the court erred in refusing to enter up judgment in its favor on the special verdict because it appeared therefrom that the decedent was guilty of contributory negligence; in refusing to submit to the jury certain special interrogatories requested by the defendant; and in giving and refusing to give certain instructions. It is also contended that the evidence fails to show negligence upon defendant's part and does show contributory negligence upon the part of decedent and the driver of the express wagon.

Plaintiffs' cause of action rests upon the view that at all times after the motorman sounded his gong and the driver of the wagon discovered that he was in the way of the car, it was impossible for him to turn out at the right side, and that, as soon as he found he would not be able to reach a place at which he could do this before the car overtook him, he attempted to turn off to the left and the wagon was struck. The driver, S. Igarashi, testified as follows: "I am in the express business for everybody who hires me. On the eighth day of August, 1907, I was taking Mrs. Fujise and her children to the train; I was driving a single wagon of ordinary size. . . . I was driving toward the south on the south side, on the right-hand side. The car came from behind in the rear. When I first saw the car it was about one hundred and fifty feet in the rear. I tried to turn on the right-hand side but found so many wagons that I could not do that, and I turned on the left. The car hit the wagon pretty hard. It hit the rear of the wagon. When the car struck the wagon the position of Mrs. Fujise was turned, you know, turned like this [indicating], and then on that moment she was knocked down on the ground; she afterward died. . . . When the car struck the wagon Mrs. Fujise was sitting on the left and that boy [her little boy] was sitting on the right." On cross-examination he testified: That the wheel which was struck was the one at the left side of the wagon in the rear, and that he heard the bell and looked back and saw the car. It was running pretty fast. The testimony of the other witnesses for plaintiffs sustained that of the driver of the wagon in substantially every particular.

The motorman's testimony discloses the defendant's theory of the accident. He said: "My car was going south on Central avenue. I saw this wagon driving ahead of me. It was on my track. The car would have hit it, if it had overtaken it. When I first noticed it . . . the wagon was quite a ways up. I came up close to the wagon. When I got to what I thought a proper distance I began sounding my gong, sounded it quite often and threw off the power. I slowed my car down. . . . I rang my gong and applied my brakes. . . . The wagon pulled off to the right. I judged that it was clear of the track. There were a few wagons there on that side, not many. When he pulled off, I fed up again, expecting to go

by, expecting him to give me the right of way. If he had stayed where he was, I would certainly have gone by, I am sure of that. When he pulled off down quite a ways he came up to where there was another team backed up against the curb. I supposed he was going to give me the right of way, but he pulled his horse in a diagonal angle across my track. . . . When I saw him pull his horse's head toward the track I throwed off again. . . . When he turned off [the first time] I fed up to five points [half speed]. . . . I never had it at more than five points along there. When I saw him turn [to the left] I throwed off the power and put on the air. There was nothing else I could have done to stop. . . . I did everything I could as soon as I saw him turn. My car ran about three feet ahead after it hit the wagon; I then backed up. It did not do any damage to the wagon. Right-hand side of the fender hit the left-hind wheel, between the felloe and the hub.'' As the testimony of the driver of the express wagon was corroborated by a number of witnesses who were standing near the scene on the ground, so that of the motor-man was corroborated by quite a number of persons who were on the car, by all the passengers who testified at the trial, and it must be conceded that if their testimony had been believed by the jury, they would have found that the wagon was safe and clear from interfering with the car while on the right-hand side of the track, and that the motorman exercised due care in the management of his car when the wagon was turned suddenly across the track.

Defendant requested the trial judge to submit to the jury twenty-seven special issues or questions, numbered consecutively from 1 to 21, and 2a, 14a, 14b, 14c, 14d, and 14e. The request was granted as to Nos. 1, 12, 13, 14, 14b and 14d, and denied as to the others. The failure to give all of these was excepted to by appellant, who also contends that the answers given to questions 14 and 14b which were submitted entitle it to judgment on the verdict. These two questions were addressed to matters relating to the issue of contributory negligence on the part of the deceased.

In order that contributory negligence shall prevent the recovery of damages for a personal injury, it must appear that the negligence is that of the injured person or of someone over whom he exercised some control. The foundation of the

doctrine is said to rest in the civil law maxim: "The harm I bring upon myself I must bear myself." (1 Beven on Negligence in Law, p. 149.) The reason for the rule which so relieves the defendant from the payment of damages for his negligence where the plaintiff has contributed to the injury by his own negligence, as it is applied in this state, is based upon an argument of convenience, to wit, the impossibility of successfully apportioning the damages between the parties, and not for the reason that the law relieves the defendant from responsibility merely because the injured party has contributed to the result by his own negligence or wrongful act. (*Needham* v. *San Francisco,* 37 Cal. 409, 419.) It is only the contributory fault of the injured party, or of someone whose fault is imputable to him, that can excuse the defendant. (1 Shearman & Redfield on the Law of Negligence, 5th ed., sec. 65.) In the jurisdictions in which this view of imputed contributory negligence has been adopted it is held that the rule has no application to a passenger in a public conveyance, or to a person riding by invitation in a private conveyance; and that such passenger or person is not chargeable with the negligence of the driver of the conveyance in either case. (1 Thompson on Negligence, secs. 500, 502; Shearman & Redfield, 5th ed., sec. 57; 7 Am. & Eng. Ency. of Law, p. 447.) There is no distinction in principle whether the passenger be on a public conveyance like a railroad train, or on an omnibus, or be on a hack hired from a public stand in the street for a drive. Those on the hack do not become responsible for the negligence of the driver if they exercise no control over him further than to indicate the route they wish to travel, or the places to which they wish to go. (*Little* v. *Hackett,* 116 U. S. 366, 379, [6 Sup. Ct. 391].) On the other hand, the rule does not absolve the passenger or guest from the duty of using ordinary care for his own safety. (1 Thompson on Negligence, sec. 503; Beach on Contributory Negligence, 3d ed., sec. 115.) No one can be allowed to shut his eyes to danger in blind reliance upon the unaided care of another, without assuming the consequences of the omission of such care. (Shearman & Redfield on Negligence, sec. 66a.) Whether the injured person has been guilty of contributory negligence in a case of this kind is, as in other cases, one chiefly of fact, and whether or not he

used ordinary care must be determined by the jury from the circumstances of each particular case. Of course, the acts to be done in the exercise of ordinary care in cases of this character are such as are peculiar to, and which may arise only in connection with, such cases, but the rule as to ordinary care is not changed or different on this account. (*Bresee* v. *Los Angeles Traction Co.*, 149 Cal. 131, 136, [85 Pac. 152].)

It cannot be said in this case, as a matter of law, that the failure of the deceased to look to ascertain the position of the car "before turning across the track," as found in answer to special interrogatory No. 14, was contributory negligence. As said by the Washington court in the case of *Wilson* v. *Puget Sound Co.*, 52 Wash. 522, [101 Pac. 53], in relation to the driver of an automobile: "The deceased had a right to assume that the driver was competent, that he knew the capacity of his machine, and that he would not put it in a perilous position." The deceased must be presumed, from her residence in Oxnard, to have been less familiar with the congested condition of the business streets of Los Angeles, and of the effect thereof, than a public express driver, and in the absence of some unusual peril, apparent to her and not to him, or to which they were equal strangers, it will be presumed that she pursued the safer plan in letting the driver take care of his own horse. It may be stated as a truism that ordinarily two persons cannot drive or control the same horse, team or vehicle at the same time. The finding that Hideno Fujise failed to look was not inconsistent with the implied finding of the general verdict that it was not necessary for her to look in exercising ordinary care for her own safety amid the surroundings in which she was placed. The finding in answer to special interrogatory No. 14b: "Prior to the collision between the said wagon and the said car did the said Hideno Fujise exercise any care or caution whatever to ascertain the approach of said car or to avoid the collision?" to wit: "No, no evidence submitted," may be measured by the same rule, that is, that by the implied finding in the general verdict neither care nor caution was required to be exercised by her prior to the time the wagon was struck by the car. In other words, it may be said that the general verdict implied a

counter-finding that under the circumstances of the case she was not required to exercise any affirmative acts of caution prior to the collision, her negative reliance upon the driver being all that was necessary to constitute ordinary care. However, in construing this finding, we must consider the entire answer, which was, in effect: ''That there was no evidence of any acts upon her part tending to establish either care or want of care.'' The burden of showing contributory negligence rested upon the defendant, and a finding that there was an absence of evidence upon this issue cannot be regarded as inconsistent with a general verdict in favor of the plaintiff.

We do not regard the analogy between a request for instructions and a request for the submission of special interrogatories so close as to justify the application to the latter of a rule of practice adopted in connection with the former. Neither does the reason underlying the general rule of practice relating to the time for presenting instructions appear to us to apply with the same force to the matter of requesting special issues to be submitted. While we agree with respondents' position that this is a matter resting largely in the discretion of the trial judge where there is neither rule of practice nor statute relating to it, we are not prepared to say that under the circumstances of this case the trial judge was justified in refusing to submit these issues solely upon the ground that the request for submission was not made in time. It has been held that in the matter of presenting instructions for the jury where there is no rule in regard to the matter a party would have a right to submit his instructions at any time before the jury leaves the box. (*People* v. *Williams*, 32 Cal. 280, 286.) And even rules applying to such matters should be framed and applied in the furtherance of justice and not strictly adhered to where such adherence would work the opposite result (page 287).

The special findings which the parties were entitled to have made by the jury under the provisions of section 625, Code of Civil Procedure, as that section read and was interpreted when this case was tried, were not the special verdict of the common-law practice which must be sufficient to support a judgment, but their primary purpose was to determine whether the general verdict was or was not against law.

(*Larsen* v. *Leonardt*, 8 Cal. App. 226, 228, [96 Pac. 395].)
They were addressed to matters relevant to the essential is-
sues impliedly found by the jury in reaching a general ver-
dict, and were subject to two conditions: "1. Is the question
so framed as to admit of a plain and direct answer? and
2. Would an answer favorable to the party preferring the
request be inconsistent with a general verdict for his ad-
versary?" (*Plyler* v. *Pacific Cem. Co.*, 152 Cal. 125, 134, [92
Pac. 56, 60].)

The questions which the court refused to give were in-
tended to elicit from the jury findings of fact relating to
the care exercised by the motorman; No. 2 related to his
sounding the bell and slowing down his car upon approach-
ing the wagon. There was no conflict in the evidence as to
the ringing of the bell, the driver admitting that he heard
the gong, and there was no denial of the motorman's state-
ment that he slowed down his car. No. 3 asked at what speed
the car was moving when the motorman first noticed the
wagon. There was no substantial conflict in the evidence as
to this. No. 4 inquired whether or not the driver of the
wagon turned off the track to the right when the car ap-
proached. If the answer to this had been that "he did,"
then No. 5 was a request that the jury find whether he drove
far enough to one side of the track to enable the car to pass
without striking the wagon. If the answers to the last two
questions justified the motorman in passing the wagon, then
No. 6 requested the jury to answer whether he increased the
speed of the car. Again, if the preceding question had been
so answered that it might be assumed that the wagon passed
far enough to the right to escape the car, No. 7 asked: "Did
the motorman suppose that he would be given the right of
way and allowed to pass the wagon?" Presupposing all these
matters except the last to be answered in accordance with
defendant's theory, No. 8 inquired, "Did the motorman sound
his gong to give warning of the fact that he was about to
pass said wagon?" No. 9, presupposing the same answers to
the preceding questions, asked: "Was the said wagon turned
back across the defendant's said track in such close proximity
to the defendant's car that a collision could not have been
avoided?" Based upon the assumption that all the preced-
ing matters had been found in accordance with the evidence

on behalf of defendant, No. 16 inquired, "State whether the motorman in charge of the defendant's car threw off his current and reversed his car and applied his brakes and tried to stop the same." Taken with the context, that is, with the series of questions and answers preceding them successively, we are of opinion that all of these questions were so framed as to admit of a plain and direct answer. While the answer to two or three of them taken alone might be immaterial, yet if the whole series had been answered in favor of defendant, it is apparent that such answers would have been inconsistent with a general verdict in favor of the plaintiff. Considered together, they cover the entire defense of the defendant upon the issue of its own negligence. If all of these questions had been answered favorable to the defendant, and such answers were sustained by uncontradicted evidence, then the defense of "no negligence" would have been established as a matter of law. This rule is declared in substance by instruction Xa, as given by the trial court.

The sum of the adjudicated cases bearing upon the relative rights of street-cars and citizens traveling in vehicles drawn by horses or other animals is that both have a right to use the street, but neither has the exclusive right. The motorman of a street-car is not necessarily obliged to stop his car when he sees a man driving in a vehicle along the line of a railway ahead of the car; but he may continue to run the car in a proper manner until he is conscious of the fact that the driver is unaware or heedless of his danger. When he is thus conscious, it is his duty to use all reasonable care and diligence to avoid running the car into the vehicle. Seeing a man driving along the track, the motorman may assume that he will turn aside and out of the way of the car, but he cannot rest on the assumption so long as to allow his car to reach a point where it will be impossible for him to control his car or give warning in time to prevent injury to the man or vehicle. (*Galveston City R. R. Co.* v. *Hewitt,* 67 Tex. 473, [60 Am. Rep. 32, 3 S. W. 705]; *Birmingham* v. *Bowers,* 110 Ala. 328, [20 South. 345]; *Schneider* v. *Mobile Light Co.,* 146 Ala. 344, [40 South. 761].) The law seems to be well settled that, where the alleged negligence of a motorman consists of an omission of duty suddenly and unexpectedly arising, such as driving a vehicle suddenly upon the track in front of the

car without warning, it is incumbent upon the plaintiff to show that the circumstances were such that the motorman had an opportunity to become conscious of the facts giving rise to the duty, and a reasonable opportunity to perform it before the railway can be held liable on the ground of negligence. (*Chicago etc.* v. *Browdy,* 206 Ill. 615, [69 N. E. 571]; *Hot Springs* v. *Hildreth,* 72 Ark. 572, [82 S. W. 245, 247]; *Kessler* v. *Citizens' R. Co.,* 20 Ind. App. 427, [50 N. E. 891].)

While of the opinion that the defendant had a right to have the special interrogatories mentioned submitted to the jury, and the failure to do so was error, yet the inferences from the law and record leading to this conclusion do not necessarily sustain appellant's further contention that uncontradicted evidence establishes the defense of no negligence. To reach this conclusion it would be necessary for us to pass upon the weight of the evidence for the respective parties, and this an appellate court will not do.

The refusal of the trial court to give the other special interrogatories, which were addressed to the matter of the contributory negligence or want of care upon the part of the deceased and the driver, has not been especially urged, and so this matter is not passed upon, but if any interrogatories of this kind are presented upon a new trial being had, it is important that they be addressed to the want of care peculiar to the facts of the case and conform to the doctrine of imputed negligence as hereinabove declared.

The giving of instruction No. XIII, if given in the form in which it appears in the record, could not have prejudiced the defendant in any manner, but it is apparent from the language of the instruction itself that it was not given to the jury as printed. The absence of intelligent meaning justifies us in assuming that the learned judge who tried the cause never delivered to the jury such a medley of words, and so we accept the corrected version given by the respondents in their brief as the true instruction delivered. This was not erroneous.

Instruction III, requested by the defendant, correctly declared the law in accordance with the authorities heretofore cited in discussing the right of the defendant to have certain special interrogatories submitted to the jury. If the jury believed the statement of the motorman, then their verdict

should have been for defendant, and instruction III is but a request that the law to this effect be given. Instruction VIII, requested by defendant, was but a repetition of III in a more succinct form. One only need have been given. The same legal propositions were practically covered by two instructions given by the court, but they were stated from the viewpoint of the plaintiff and lacked the directness of statement of defendant's theory that was shown in the instructions refused. While the judgment would not be reversed for this reason alone, we are of opinion that the defendant was entitled to have had one or the other of these instructions given to the jury.

There was no error in the instructions of the trial judge in respect to contributory negligence which was to defendant's prejudice. These instructions were more favorable to the defendant than they should have been. The trial court framed its instructions in this respect upon the theory that the negligence of the driver was to be imputed to the deceased. Being a public expressman, driving the deceased along an indicated route to a fixed place to which she directed him to go (the train), she did not exercise such control over him that his negligence could be imputed to her. (*Little v. Hackett*, 116 U. S. 366, 379, [6 Sup. Ct. 391].) The defendant was entitled to have the jury instructed that the deceased was required to use ordinary care for her own safety under the circumstances, but not that she must necessarily look or listen, or direct or attempt to control the driver after having selected one whom she had a right to assume to be competent, careful and prudent, and whom she had not found to be otherwise. (*Bresee v. Los Angeles Traction Co.,* 149 Cal. 131, 136, [85 Pac. 152].)

Judgment and order reversed and cause remanded for a new trial.

Allen, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 14, 1910.